PONCE FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* G-63-14      *Resuelto:* 30 de enero de 1964

*Raúl Matos,* abogado de la recurrente. El Registrador recurrido compareció por escrito.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mediante la escritura número 191 de 14 de agosto de 1963 otorgada ante el Notario don Armando Irizarry Hernández, los cónyuges don César Nazario Borrely y doña Concepción González constituyeron hipoteca voluntaria sobre una finca urbana a favor de la entidad recurrente. Las cláusulas del contrato que son pertinentes para la resolución del presente recurso rezan así:

"SEGUNDO: Que la Ponce Federal Savings and Loan Association of Puerto Rico, asociación mutua de ahorros y préstamos organizada bajo las leyes del Congreso Federal, le ha hecho *un préstamo* [al deudor hipotecante] *por la cantidad y bajo los términos y condiciones de pago que se especifican en el párrafo décimo quinto de esta escritura.*"

"TERCERO: *Que en garantía del pago del importe de dicho pagaré y de sus intereses, según lo pactado, el deudor hipotecante constituye esta hipoteca* sobre la propiedad descrita en el párrafo décimo cuarto de esta escritura, a favor de la Ponce Federal Savings and Loan Association of Puerto Rico, sus sucesores o cesionarios; *entendiéndose que esta carga continuará en toda su fuerza hasta que haya sido pagado y satisfecho el préstamo en* su totalidad, con sus intereses, hasta el día del *pago final. En caso de reclamación judicial, la propiedad hipotecada responderá de las cantidades que, en calidad de capital, intereses, honorarios de abogado, gastos o adelantos hechos por el acreedor, se especifican en el párrafo quinto de esta escritura.*"

"DECIMOQUINTO: *Las cantidades por las cuales se hipoteca la finca descrita anteriormente y a las cuales se hace referencia en el párrafo tercero precedente, son las siguientes:*

"(a) SEIS MIL QUINIENTOS DOLARES ($6,500.00) en calidad de préstamo;

"(b) OCHOCIENTOS CINCUENTA DOLARES ($850.00) para intereses, incluyendo los de mora;

"(c) OCHOCIENTOS CINCUENTA DOLARES ($850.00) para costas, gastos, desembolsos y honorarios de abogado en caso de ejecución o reclamación judicial por cualquier vía;

"(d) OCHOCIENTOS CINCUENTA DOLARES ($850.00) para cualesquiera gastos o adelantos hechos por la acreedora.

"Se pagarán intereses al tipo del OCHO POR CIENTO (8%) ANUAL y en caso de mora regirá igual tipo sobre cualesquiera suma vencida y no pagada en el mismo día de su vencimiento, bien sea de principal o de intereses.

"Este préstamo se pagará en plazos mensuales de CINCUENTA Y CUATRO DOLARES CON TREINTA Y SIETE CENTAVOS ($54.37), comenzando el día primero de octubre de mil novecientos sesenta y tres y terminando el día primero de septiembre de mil novecientos ochenta y tres. Los deudores hipotecantes podrán pagar en cualquier momento el total o cualquier cantidad del capital no vencido de este préstamo, previo pago de dos meses de intereses al tipo estipulado del OCHO POR CIENTO ANUAL." (Subrayado nuestro.)

■ La copia certificada de dicho documento fue presentada para inscripción consignándose para ello sellos de rentas internas por valor de $12.00, conforme al número dos del arancel prescrito por la Ley Núm. 67 de 20 de junio de 1963, 30 L.P.R.A. sec. 1767a, 1 S.L.P.R., pág. 594.[1] El presentante consideró para fijar el valor del derecho a inscribirse la suma del capital—$6,500—y las tres partidas de $850 cada una a que se refiere la cláusula decimoquinta, o sea un total de $9,050. El Registrador requirió la consignación de una suma adicional de $6.00 para completar los derechos de inscripción aduciendo que a los fines del cómputo la suma por concepto de intereses que procedía tomar en cuenta no era la de $850, sino $6,548.80.[2] Ante la negativa del

[1] "Por la inscripción . . . respecto a cada finca o derecho, se devengará:

"(a) .    .    .    .    .    .    .    .

"(b) Cuando el valor de la finca o derecho exceda de mil dólares se cobrará dos dólares por los primeros mil dólares y un dólar adicional por cada mil dólares o fracción de mil hasta cien mil dólares."

[2] Como en la escritura se convienen plazos mensuales de $54.37 para satisfacer el capital y los intereses en un término de 20 años, el total a satisfacerse por tales conceptos ascendería a $13,048.80. De este total se deduce el importe del principal de $6,500, y resulta un balance de $6,548.80 para intereses.

presentante a este requerimiento, procedió a suspender la inscripción y a devolver el documento, tomando anotación preventiva por el término que fija la ley.

El problema se reduce a determinar los intereses garantizados hipotecariamente en este crédito fructífero. *Torres v. Fernández*, 65 D.P.R. 622 (1946), iluminadora opinión del malogrado Juez señor De Jesús, arroja la luz que necesitamos. Dícese a la pág. 628: "Consecuencia lógica del principio jurídico de que lo accesorio sigue al principal, es la de que los intereses, como frutos que son del capital, si éstos son estipulados en la escritura con expresión del tipo convenido y así se hace constar en la inscripción, quedan asegurados con la hipoteca que garantiza el capital, *aunque no se hayan garantizado expresamente*." Se trataba allí de una hipoteca constituida en garantía de un préstamo formalizado mediante escritura en la cual se estipularon las siguientes condiciones:

"Segundo: Que el capital prestado devengará intereses hasta que sea totalmente satisfecho a razón del uno por ciento mensual pagaderos por meses vencidos en el domicilio del acreedor con la condición de que vencidos tres meses corridos sin ser satisfechos, se entenderá vencida toda esta obligación y estará el acreedor en aptitud para proceder judicialmente al cobro del capital e intereses.

"Plazo.

"Tercero: Que el capital prestado será devuelto al acreedor en el término de dos años contados desde esta fecha [26 de julio de 1930].

"Crédito adicional.

"Cuarto: De común acuerdo se asigna un crédito adicional de quinientos dollars para intereses, costas, gastos, desembolsos y honorarios de abogado en caso de reclamación judicial así: Trescientos dollars para intereses y doscientos dollars, para costas, gastos, desembolsos y honorarios de abogado.

"Garantía.

"Quinto: En garantía de los seis mil dollars y de los quinientos dollars de crédito adicional, los cónyuges deudores,

Pastoriza-Cruz, constituyen hipoteca voluntaria a favor de don Antonio Fernández Méndez sobre la siguiente finca:"

El anterior tribunal de distrito había anulado un procedimiento ejecutivo sumario porque en el mismo se habían cobrado intereses por $1,050, cuando a su juicio, en virtud de la cláusula quinta antes transcrita, solamente estaba *garantizada hipotecariamente* la suma de $300, tanto en cuanto al deudor primitivo como en lo que respecta al posterior adquirente. En forma inequívoca se pronunció el Juez señor De Jesús advirtiendo que no debía confundirse la hipoteca principal que garantizó, por ministerio de ley, el capital e intereses hasta el total pago de la deuda, con la hipoteca especial que redujo la responsabilidad por intereses con perjuicio de tercero, de lo dispuesto en el Art. 114 de la Ley Hipotecaria relativa a dos anualidades y la corriente, a la cantidad de $300:

"Esa interpretación pierde de vista que la hipoteca que expresamente se constituyó para garantizar el capital, implícitamente aseguró por ministerio de la ley, los intereses que debe pagar el primitivo deudor hasta que la deuda sea totalmente satisfecha. Consecuentemente era innecesario constituir otra hipoteca para garantizar lo que la ley ya había garantizado. Si consideramos que como regla general el interés es el único incentivo que mueve al acreedor a prestar su dinero; y si tenemos en cuenta la protección que la ley da al acreedor hipotecario garantizándole con la hipoteca todos los intereses estipulados—siempre que se hagan constar en la inscripción—mientras la finca gravada pertenezca al primitivo deudor, no debemos presumir que el acreedor ha renunciado en parte a ese derecho, reduciendo la garantía a cinco mensualidades de intereses ($300) solamente, a menos que de manera clara e inequívoca surja del contrato la intención de los contratantes de modificar la norma prescrita por la ley. Por el contrario, del contexto de la escritura surge que no fue esa la intención de los contratantes, pues no solamente estipularon intereses por el término del contrato, sino que los convinieron hasta que la obligación fuese totalmente

satisfecha y estipularon, además, que vencidas tres mensualidades de intereses y no satisfechas, el acreedor tendría derecho a proceder judicialmente al cobro del capital e intereses."

■ Otro tanto ocurre a nuestro juicio en el presente caso donde las circunstancias son muy similares. En la cláusula tercera se constituye la garantía hipotecaria para asegurar el pago "del importe de dicho pagaré *y de sus intereses, según* lo pactado," carga que subsiste "*hasta que haya sido pagado y satisfecho el préstamo en su totalidad, con sus intereses, hasta el día del pago final.*" La referencia en el párrafo decimoquinto a las cantidades por las cuales se hipoteca la finca, en cuanto alude a la suma de $850 "para intereses, incluyendo los de mora," no tiene otro alcance que reducir la responsabilidad por este concepto, *en perjuicio de tercero,* de la de dos anualidades y la corriente, (3) a la suma especificada de $850. Como se sostuvo en *Díaz* v. *Quiñones,* 68 D.P.R. 249, 258 (1948), "la fijación [en la escritura de hipoteca] de un crédito para intereses tiene por objeto proteger a posteriores adquirentes de la finca o de un crédito hipotecario sobre la misma," pero entre las partes originales la garantía, por ministerio de ley, cubre todos los intereses que se devenguen durante el término contractual. Cf., en cuanto a los intereses de mora, *Buil* v. *Banco Popular,* 69 D.P.R. 254 (1948) y *Piovanetti* v. *Vivaldi,* 80 D.P.R. 108 (1957).

■ Por otro lado, de la lectura e interpretación en conjunto de todas las cláusulas de la escritura, no puede afirmarse que las partes intentaron derogar la norma legal sobre la garantía entre ellas de todos los intereses que se deven-

---

(3) El Art. 114 de la vigente Ley Hipotecaria española permite expresamente el pacto en contrario sobre la extensión de la garantía hipotecaria a los intereses, bien para eliminarla, ampliarla o reducirla con relación al número de anualidades, o substituirla por la fijación de una cantidad alzada. Sólo que en el caso de ampliación o de la fijación de una cantidad alzada no podrá excederse de 5 anualidades o del importe de éstas. Roca Sastre, *Derecho Hipotecario* (Ed. Bosch, 1954), tomo IV, págs. 342-345.

garan durante la subsistencia del crédito. Si fuere así, es preciso que aparezca en forma más específica y clara. [4]

Asiste la razón al Registrador. *Se confirmará la nota recurrida.*

---

[4] Véanse además los Arts. 147 y 148 de la Ley Hipotecaria, 30 L.P.R.A. secs. 260 y 261.