DIEGO PERDOMO ÁLVAREZ, demandante y recurrente, *v.* SUCESIÓN DE MATILDE CINTRÓN SALGADO, compuesta por WILFREDO ÁLVAREZ CINTRÓN y OTROS, demandados y recurridos.

*Número:* R-82-385      *Resuelto:* 24 de marzo de 1983

*Ángel L. Córdova Campos*, abogado del recurrente; *Juan T. Peñagarícano, Jr.*, abogado de los recurridos; *Wilfredo Álvarez Cintrón, Alberto Álvarez Cintrón, Encarnación Álvarez* y *José R. Fournier Torres*, abogados de la recurrida Gladys Álvarez.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Resolvemos en este caso que el poseedor de unos pagarés hipotecarios en que se fijan intereses en exceso de los permitidos por legislación sobre usura, cuyos intereses no han sido pagados por el deudor, se libera de las penalidades dispuestas por el Art. 1652 del Código Civil, 31 L.P.R.A. sec. 4594, si al reclamar el pago de la deuda por vía judicial, limita su reclamación de intereses en la demanda al tipo de interés máximo que le sería dable recobrar bajo dicha legislación. La demanda así interpuesta constituye una renuncia efectiva al cobro de los intereses usurarios que le releva de penalidades en virtud del Art. 1654 del Código Civil, 31 L.P.R.A. sec. 4596.

I

El 5 de marzo de 1971 doña Matilde Cintrón Salgado otorgó cinco pagarés al portador, vencederos el 5 de marzo de 1974, que se enumeraron del uno al cinco, por las siguientes cantidades: $10,000 el número uno, $2,000 el número dos e igual cantidad el número tres, $1,000 el número cuatro y $5,000 el número cinco, para un total de $20,000. Se obligó en cada uno a pagar intereses al diez por ciento anual más determinadas cantidades en caso de reclamación judicial. (¹) En la misma fecha la señora Cintrón Salgado otorgó escritura pública en que, para garantizar el pago de dichos pagarés, constituyó hipoteca voluntaria sobre un condominio indiviso de diez dieciochoavas (10/18) partes en una finca en la municipalidad de Toa Alta.

La mencionada escritura fue presentada oportunamente al Registro de la Propiedad, habiéndose inscrito la hipoteca, pero denegándose la inscripción en cuanto a los intereses expresados. Señaló el Registrador que el interés del diez por ciento anual era contrario a las disposiciones de la Ley Núm. 92 de 6 de mayo de 1938, según enmendada por la Ley Núm. 5 de 8 de junio de 1970 y al Reglamento promulgado de acuerdo con esta ley, que fijó en 9% el tipo de interés máximo que podía cobrarse a partir del 18 de enero de 1971.

Con fecha de 5 de diciembre de 1980, se instó demanda contra los componentes de la sucesión de doña Matilde Cintrón Salgado para la ejecución de dicha hipoteca. Se alegó *inter alia*, el otorgamiento de la mencionada escritura de hipoteca y los pagarés por ella garantizados y "sus intereses a razón del 9% anual hasta su total pago y la suma de $2,000.00 para honorarios de abogado", la inscripción de la hipoteca, y que no se habían satisfecho los intereses vencidos desde el 5 de marzo de 1971. Los demandados compare-

---

(¹) Dichas cantidades son equivalentes al diez por ciento (10%) del importe de cada pagaré.

cieron oportunamente y en su contestación aceptaron algunas alegaciones de la demanda, incluso la de no haberse pagado los intereses, y negaron específicamente que el interés acordado fuera el 9% anual. Plantearon la defensa de usura e invocaron la aplicación del Art. 1652 del Código Civil, 31 L.P.R.A. sec. 4594.

El demandante recurre contra sentencia que al estimar la demanda dio por buena la defensa de usura y condenó a los demandados a pagar $15,000 al demandante y $5,000 al Estado Libre Asociado de Puerto Rico, eximiéndoles del pago de intereses, gastos, costas y honorarios de abogado. Se dispuso, además, que una vez adviniera firme dicha sentencia se procediera a su ejecución mediante la venta de la finca en pública subasta.

## II

Los planteamientos del demandante recurrente ante nos van dirigidos a impugnar que se aplicara lo dispuesto por el Art. 1652 del Código Civil, 31 L.P.R.A. sec. 4594. Dicho precepto dispone así:

Sec. 4594. *Recibo de dinero o mercancías a un tipo de interés excesivo; cumplimiento de los contratos*

Excepto como queda autorizado por la sección anterior, ninguna persona podrá exigir o recibir, directa o indirectamente, dinero o mercancías, a un tipo de interés mayor por el préstamo o la prórroga del préstamo de algún dinero, que el tipo fijado por este Capítulo. Nada de lo contenido en este Capítulo se interpretará en el sentido de prohibir la venta de efectos al contado a un precio más bajo que al crédito.

Ningún contrato en el cual se reserve, acepte o asegure, o se convenga en reservar, aceptar o asegurar, un tipo de interés mayor que el que se permite por este Capítulo, podrá hacerse efectivo en una corte de Puerto Rico, sino por el importe del capital adeudado; y la corte deberá, además, disponer en la sentencia condenando al deudor al pago de capital que el acreedor recobre solamente de su deudor el setenta y cinco por ciento de dicho capital y que el veinticinco por ciento restante sea adjudicado y recobrado por el Estado Libre Aso-

ciado de Puerto Rico, quien podrá obtener mandamiento de ejecución, del mismo modo que el demandante, y sin preferencia sobre el montante adjudicado a éste, para hacer efectivo el veinticinco por ciento así adjudicado.

Los derechos definidos en esta sección no son renunciables.

Alega el recurrente que, como en su demanda reclamó intereses al 9%, que no excede el máximo legal, debió aplicarse el Art. 1654 del Código Civil, 31 L.P.R.A. sec. 4596, que dispone:

Sec. 4596. *Reembolso de dinero o renuncia del derecho a interés legal*

A cualquier persona que reembolsase o devolviese algún dinero, mercancías u otras cosas tomadas, aceptadas o recibidas en violación de este Capítulo, o que, por medio de un documento entregado a la otra parte del contrato, ya antes de iniciarse el juicio para la suspensión de la validez del mismo, o ya antes de que, en un juicio iniciado para hacer cumplir el contrato interponga el demandado como defensa la acusación de usura; o que renunciase de una manera efectiva el derecho a interés, descuento o valor reservado o retenido en violación de este Capítulo; se le relevará de futura multa, penalidad o castigo, y el contrato desde la fecha del reembolso, devolución o renuncia por escrito, será válido y efectivo.

■ Antes de considerar estos planteamientos, valga señalar que actuó correctamente el Registrador de la Propiedad al limitar la inscripción al importe del capital garantizado mediante la hipoteca y denegarla en cuanto a los intereses. *Caraballo* v. *Registrador*, 48 D.P.R. 923 (1935).

Para la fecha del otorgamiento de los pagarés y de la escritura —5 de marzo de 1971— el interés máximo que se podía cobrar para el tipo de obligación que aquí nos ocupa era el nueve por ciento anual. Para esa fecha estaba vigente el Reglamento promulgado por la Junta de Directores del Banco Gubernamental de Fomento y aprobado por el Gobernador, de 12 de enero de 1971, efectivo desde el 18 de enero de 1971, adoptado de conformidad con la Ley Núm. 5

de 8 de junio de 1970, enmendatoria de la Sec. 4 de la Ley Núm. 92 de 6 de mayo de 1938, conocida como Ley de Usura, 33 L.P.R.A. sec. 1754.[2] Dicho Reglamento disponía en su Regla Núm. 1, así:

1. En aquellas transacciones contempladas por el Artículo 1649 del Código Civil y por las Secciones 1 y 2 de la Ley Núm. 92 del 6 mayo de 1938, no podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares, o su equivalente en valor.

Habiéndose fijado en los cinco pagarés objeto de este pleito un interés del diez por ciento anual, que excedía el máximo autorizado, no podía hacerse efectivo el cobro sino en la medida dispuesta por el Art. 1652 del Código Civil, antes transcrito. Dicha disposición es clara. Solamente puede cobrarse "el importe del *capital* adeudado" y distribuirse su pago en la proporción allí señalada de setenticinco por ciento para el acreedor y el restante veinticinco por ciento para el Estado. (Énfasis suplido.) *Velázquez* v. *C. Jiménez, Inc.*, 113 D.P.R. 667 (1982); *J. E. Candal & Co.* v. *Rivera*, 86 D.P.R. 508, 517 (1962); *Giráu* v. *González*, 73 D.P.R. 410, 416 (1952).

Veamos, sin embargo, si a los hechos de este caso le es aplicable lo dispuesto por el Art. 1654 del Código Civil, antes transcrito. Esta disposición no ha sido objeto de interpretación por este Tribunal. No hemos podido hallar su origen específico. Sabemos que es parte de la llamada Ley de Usura aprobada el 1 de marzo de 1902, cuyo articulado se hizo formar parte del Código Civil por la Ley Núm. 48 de 28 de abril de 1930.[3] No podemos encontrar el origen de la Ley de 1902 en España, pues para aquel entonces no había

---

[2] La llamada Ley de Usura fue derogada por la Ley Núm. 1 de 15 de octubre de 1973, que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento y dispone lo relativo a los intereses máximos a cobrarse por préstamos o prórrogas de dinero o mercancías, según de tiempo en tiempo lo determine dicha Junta. 10 L.P.R.A. secs. 998 a 998k.

[3] Art. 9 de dicha ley, Leyes de Puerto Rico, 1930, pág. 393.

en España legislación sobre intereses usurarios. Véase, R. Morán, *Aplicación de la ley de usura a los préstamos pagaderos a plazos*, 29 Rev. Jur. U.P.R. 243 (1959-60). La Ley de 1902 fue una de las primeras aprobadas bajo el régimen estadounidense en Puerto Rico, y sus antecedentes se trazan a la legislación vigente para aquella época en Estados Unidos. Morán, *op. cit.* No hemos hallado, sin embargo, disposición similar a la del Art. 1654 en las leyes de ningún estado, salvo Florida, pero su disposición sobre el particular data del 1979. (4)

Es de notarse que al aprobarse la Ley de 1902 se dio una redacción a su Sec. 4, que se incorporó al Código Civil como el Art. 1652, antes transcrito, que hacía del préstamo con intereses usurarios uno totalmente nulo. *Horton et al.* v. *Robert*, 11 D.P.R. 176, 185 (1906). Al enmendarse dicha Sec. 4 por la Ley Núm. 47 de 13 de abril de 1916, y darse a dicha sección la redacción que actualmente tiene como Art. 1652 del Código Civil, se eliminó el rigor de la anterior redacción y se permitió al acreedor recobrar el capital, aunque limitado a un setenticinco por ciento. De ahí que en *Caraballo* v. *Registrador*, supra, resolviera este Tribunal que el Registrador de la Propiedad, al calificar un contrato de hipoteca que estipula el pago de intereses usurarios, tiene autoridad para impugnar la validez de tal contrato y negarse a inscribirlo únicamente en lo que respecta a los intereses.

La interpretación que del Art. 1652 se hizo en *Caraballo*, supra, demuestra que los cambios legislativos que se

---

(4) Véase, *Summary of Usury Laws of Each State*, en Rohan, *Real Estate Financing*, Matthew Bender, 1980, Vol. 4, Sec. 3.04. Bajo la Ley de Florida se establecen determinadas penalidades según quien sea el deudor, si un individuo o una corporación, y según el tipo de interés se determina si su cobro es un delito grave o menos grave. Se releva al acreedor de dichas penalidades si antes de iniciar la acción para el cobro notifica al deudor que los intereses son usurarios y devuelve lo cobrado en exceso más intereses sobre éste, y si ajusta el contrato. 19C Fla. Stat. Ann. Sec. 687.01 *et seq.*; 19 Fla. Stat. Ann. Sec. 658.50; 16 Fla. Stat. Ann. Sec. 516.02 *et seq.*; 4 F.S.A. Sess. Laws '79, Ch. 79-274; 3 F.S.A. Sess. Laws '79, Ch. 79-592; 6 F.S.A. Sess. Laws '79, Ch. 79-90.

le han hecho han evolucionado hacia una consideración menos restrictiva de los derechos del acreedor de un préstamo usurario, a diferencia de la legislación sobre el particular en diferentes estados de la Unión. La redacción del Art. 1654 estuvo desde un principio más a tono con esa tendencia evolutiva que culminó en la actual redacción del Art. 1652 por la Ley de 1916.

La limitada jurisprudencia de este Tribunal que toca el Art. 1654 ha seguido esa misma tendencia respecto a este artículo. Así, en *Smith* v. *Negrón*, 54 D.P.R. 401, 404 (1939), expresó este Tribunal:

> . . .El privilegio, o *locus penitentiae*, según podría llamársele, que el artículo 1654 del Código concede al usurero es independiente de cualesquiera derechos definidos por la ley de 1916 y no está en conflicto con las disposiciones de dicha ley sobre irrenunciabilidad. El significado de la sección 4 del estatuto sobre usura es que un deudor no puede legalmente obligarse a no plantear la defensa de usura, y en ese sentido es análoga a nuestra ley de *homestead* actual.
>
> Las confiscaciones no son favorecidas por la ley y con toda probabilidad teniendo eso en mente fue que la Asamblea Legislativa en 1902 concedió al acreedor un período de gracia para ajustarse a la ley. No nos parece que haya ninguna otra interpretación razonable. Por tanto, el primer señalamiento no puede prevalecer.

En *Marrero* v. *Olmeda*, 69 D.P.R. 217 (1948), fue más lejos este Tribunal. En dicho caso se pactaron intereses al 9% anual sobre una deuda de $2,400. El interés máximo permitido entonces para esa suma principal era el 8%. Al faltar la deudora al pago de determinadas mensualidades, el acreedor invocó la cláusula de aceleración pactada en el contrato y reclamó judicialmente el pago del principal e intereses. En su contestación la demandada alegó, entre otras defensas, que los intereses cobrados por el préstamo eran de carácter usurario. *En la vista del caso*, el demandante renunció a los intereses. Dijimos:

No estamos conformes con la contención de la parte apelante. La renuncia de los intereses, hecha por los demandantes en el momento de la vista, no puede tener el efecto de subsanar la falta de pago en que habían incurrido las demandadas en la fecha en que se radicó la demanda. Si las demandadas creían tener derecho a no pagar intereses sobre los $2,000 que recibieron en calidad de préstamo, por considerar que dichos intereses eran usurarios, ellas debieron abstenerse de pagar la parte correspondiente a los intereses y pagar la parte correspondiente a la amortización del préstamo. Al no hacerlo así, incurrieron en falta de pago de cinco mensualidades, lo cual daba derecho a los demandantes a reclamar judicialmente el pago del préstamo. Pág. 225.

█ Es interesante notar que en esta decisión se pasó por alto el requisito del Art. 1654 de que la renuncia se haga por escrito antes de que se plantee la defensa de usura. Posiblemente ello se debió a que se siguió la redacción en español en vez de seguirse el texto en inglés del artículo, que es lo procedente, toda vez que existe discrepancia entre ambos textos. Art. 13, Código Civil, 31 L.P.R.A. sec. 13; *Descartes, Tes.* v. *Tribl. Contribuciones y Cerra, Int.,* 74 D.P.R. 567, 582 (1953).([5]) La diferencia es notable. En el

---

([5]) He aquí las dos redacciones, en español y en inglés:

"A cualquier persona que reembolsase o devolviese algún dinero, mercancías u otras cosas tomadas, aceptadas o recibidas en violación de este Capítulo, o que, por medio de un documento entregado a la otra parte del contrato, ya antes de iniciarse el juicio para la suspensión de la validez del mismo, o ya antes de que, en un juicio iniciado para hacer cumplir el contrato interponga el demandado como defensa la acusación de usura; o que renunciase de una manera efectiva el derecho a interés, descuento o valor reservado o retenido en violación de este Capítulo; se le relevará de futura multa, penalidad o castigo, y el contrato desde la fecha del reembolso, devolución o renuncia por escrito, será válido y efectivo."

"Any person who repays or returns any money, goods or other things taken, accepted or received in violation of this chapter, or by a written instrument delivered to the other party of the contract before the commencement of a proceeding to enjoin the enforcement of the contract, or before the defense of usury is interposed by the borrower in an action on the contract, effectually relinquishes the right to any interest or discount or value reserved in violation of this chapter, shall be relieved from further forfeiture, penalty or punishment, and the contract from the date of the repayment, return or written relinquishment shall be valid and effectual." Esta redacción en inglés es la que aparece en la Sec. 6 de la ley original de 1 de marzo de 1902, idéntica a como se codificó en el texto en inglés de *Laws of Puerto Rico Annotated.* No ha sido objeto de enmienda.

texto en español, la frase "o que renunciase de una manera efectiva el derecho a interés, descuento o valor reservado o retenido", está separada de las que le preceden y está en la disyuntiva. En la redacción en inglés no hay disyuntiva y la frase *"effectually relinquishes the right to any interest or discount or value reserved"* es continuación inseparable de las frases que la preceden.

En el más reciente caso de *Planned Credit of P.R., Inc.* v. *Page*, 103 D.P.R. 245, 251 (1975), reconocimos la virtualidad de la renuncia de las penalidades establecidas por el articulado sobre usura.

■ No puede decirse que la "multa, penalidad o castigo" a que se refiere el Art. 1654 se limite a procedimientos de naturaleza criminal. Las disposiciones de naturaleza criminal sobre usura se adoptaron con posterioridad a la Ley de 1 de marzo de 1902.([6])

En el caso ante nuestra consideración, no hay duda de que los intereses especificados en los pagarés rebasaban el límite establecido y vigente en la fecha en que se otorgaron y eran, por tanto, usurarios; pero dichos intereses nunca se pagaron, y al instarse la demanda no se exigieron. Se reclamó el interés del 9%, que era el máximo permitido. Al invocarse la defensa de usura ya se había hecho renuncia de los intereses usurarios, por escrito, en la misma demanda. Este hecho fue reconocido por estipulación escrita de las partes, de 7 de abril de 1982, sometida al tribunal de instancia, que en su penúltimo párrafo dice:

> Los intereses sobre el principal reclamados por el demandante en la demanda son a razón del nueve (9%) por ciento anual, contados a partir del 5 de marzo de 1971, hasta el día de su total pago.

---

([6]) Véase la Ley Núm. 92 de 6 de mayo de 1938 (33 L.P.R.A. secs. 1751 a 1753). Esta ley fue derogada por la Núm. 1 de 15 de octubre de 1973, que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento, y mantiene en términos generales las mismas penalidades que la ley derogada. Véase, 10 L.P.R.A. sec. 998 y ss.

Esta renuncia cumple cabalmente las exigencias del Art. 1654 del Código Civil y releva al demandante y aquí recurrente de toda penalidad. Tiene derecho, por tanto, a cobrar para sí, íntegramente, el capital prestado y sus intereses al 9% anual desde el 5 de marzo de 1971.

## III

Réstanos considerar dos planteamientos adicionales, uno promovido por los recurridos y otro que surge de los autos ante nos.

## —A—

■ Plantean los recurridos que por haberse denegado la inscripción de los intereses en el Registro de la Propiedad, los mismos no son recobrables. No tienen razón.

El Art. 145 de la Ley Hipotecaria vigente en la fecha en que se otorgaron los pagarés y la escritura de constitución de hipoteca, 30 L.P.R.A. sec. 258, invocado por los recurridos, disponía:

> No se considerará asegurado con la hipoteca el interés del préstamo en la forma que prescribe la sec. 210 de este título, sino cuando la estipulación y cuantía de dicho interés resulten de la inscripción misma.

La Sec. 210 a que se alude en dicha sección es el Art. 114 de dicha ley, y disponía:

> La hipoteca constituida a favor de un crédito que devengue interés, no asegurará con perjuicio de tercero, además del capital, sino los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente.[7]

■ Estas disposiciones aprovecharían a un tercero adquirente de la propiedad hipotecada, pero no a los recu-

---

[7] Estos dos artículos fueron recogidos por la Ley Hipotecaria de 1979 en que, aunque se varía la redacción, no se alteran substancialmente. Véanse los Arts. 190 y 166 de la actual Ley Hipotecaria, 30 L.P.R.A. secs. 2609 y 2562, respectivamente.

rrentes, que son causahabientes por herencia de la señora Cintrón Salgado, otorgante de los pagarés y de la hipoteca y titular registral del derecho de propiedad que se gravó con la hipoteca. Véase, *Ponce Federal Savings* v. *Registrador*, 89 D.P.R. 882, 887 (1964).

—B—

■ Notamos que la sentencia recurrida dispone, para su ejecución, que se venda en pública subasta la finca descrita en la demanda. Parece que, inadvertidamente, se pasó por alto el hecho de que la otorgante de la escritura de hipoteca no era dueña de dicha finca. Ella era dueña de una participación indivisa equivalente a diez dieciochoavas partes (10/18) de la finca, y eso fue lo que hipotecó. La venta judicial en virtud de subasta no podrá afectar más de lo que ella podía enajenar.

## Conclusión

Por los fundamentos expresados, *se modificará la sentencia recurrida para disponer que se declare con lugar la demanda y se condene a los demandados a pagar al demandante la cantidad de $20,000, suma que totalizan los cinco pagarés, más intereses al 9% anual desde el 5 de marzo de 1971 hasta el pago de la deuda, las costas, y $2,000 para honorarios de abogado, según pactado. A falta de pago de dichas sumas, se procederá a la ejecución de la sentencia mediante la venta en pública subasta de la participación de los deudores en la finca hipotecada, a saber, un condominio indiviso de diez dieciochoavas partes. Así modificada, se confirmará la sentencia recurrida.*