Pabón Chameco, Jueza Ponente
*598TEXTO COMPLETO DE LA RESOLUCION
Comparecen ante nos, Aníbal Morales García, Aurea Esther Rivera Díaz, la Sociedad Legal de Gananciales compuesta por ambos y Cajava Development, en adelante, señor Morales, solicitando la revisión de una Orden emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro de instancia denegó una "Solicitud de Relevo de Sentencia bajo la Regla 49.2 de las de Procedimiento Civil". Por las razones que expresamos a,continuación, se deniega la expedición del auto solicitado.
I
Según surge del recurso, el 31 de julio de 1998, Harry Torres Muñiz, en adelante, señor Torres, interpuso demanda sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios. En la misma alegó que la parte peticionaria había incumplido con los pagos mensuales estipulados en dos (2) pagarés, declaró vencida la deuda y solicitó el pago total de la deuda, así como $25,000 por concepto de daños y peijuicios.
Dicha demanda fue contestada el 2 de enero de 1999, alegándose, esencialmente, que ambos pagarés reflejaban intereses usurarios.
Trabada la controversia y luego de varios incidentes procesales, el 21 de junio de 2000, las partes presentaron ante el Tribunal de Primera Instancia el Informe de Conferencia con Antelación al Juicio.
Así las cosas, el foro de instancia dictó Sentencia el 22 de septiembre de 2000, notificada el 28 de septiembre de 2000. En dicha sentencia, el tribunal a quo recogió unos acuerdos transaccionales a los que las partes habían llegado. Entre los acuerdos informados por las partes y recogidos en dicho dictamen, se encontraban, entre otros: que el señor Morales estipulaba la suma de $55,000 como la deuda total y se obligaba a satisfacer dicha cantidad en un término de (60) días, contados a partir de la notificación de la sentencia. De transcurrir dicho plazo, sin satisfacer la anterior deuda, la misma devengaría intereses a razón del siete porciento (7%) hasta su pago total y serían ejecutables las garantías, así como la imposición de $500.00 por concepto de honorarios de abogados. Se estipuló, además, que los tres (3) solares mencionados en los dos (2) pagarés continuarían garantizando la anterior deuda, la cual era sin especial imposición de costas, ni gastos del pleito.
El 5 de marzo de 2001, dado que el señor Morales se negaba a otorgar las correspondientes escrituras de segregación, el señor Torres preséntó una "Moción Solicitando Orden Urgente" solicitándole al foro instancia tres (3) remedios, a saber: que ordenara la preparación de ciertas escrituras de segregación de los solares que garantizaban la deuda en disputa; que ordenara al Alguacil General comparecer a nombre de los demandados para poder inscribir los solares; y que una vez segregados los solares, fueran ejecutados mediante venta en subasta pública. Mediante Orden de 13 de marzo de 2001, el foro de instancia concedió los remedios solicitados.
Así las cosas, el 20 de marzo de 2001, el señor Morales presentó "Solicitud de Relevo de Sentencia bajo la Regla 49.2 de las de Procedimiento Civil". En su solicitud alegó que la Sentencia dictada por el tribunal a quo era nula, toda vez que era contraria a la ley y al orden público. Mediante Orden de 6 de abril de 2001, notificada el 10 de abril de 2001, dicha solicitud fue denegada.
Inconforme con dicha determinación, el señor Morales recurre ante este Tribunal el 8 de mayo de 2001. El 18 de mayo de 2001, el señor Torres presentó su oposición.
*599Con el beneficio de ambas comparecencias, procedemos a resolver el recurso.
II
En su recurso, el señor Morales plantea que incidió el foro de instancia al denegar la "Solicitud de Relevo de Sentencia bajo la Regla 49.2 de las de Procedimiento Civil", sin considerar el planteamiento de que tanto el contrato celebrado entre las partes como la estipulación habida entre las partes, eran nulos, al contravenir la ley y el orden público, por lo que procedía el relevo de sentencia y el archivo del pleito.
m
La Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 49.2, provee un mecanismo para que una parte pueda solicitar el relevo de una sentencia en su contra, siempre que se cumpla con una de las causales enumeradas en dicha regla y se presente la moción dentro de un término razonable que no puede exceder de seis (6) meses de haberse registrado la sentencia. Banco de Santander P.R. v. Fajardo Farms, Corp., 141 D.P.R. 237, 243 (1996).
Dicho precepto legal reza, en lo pertinente:

"Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

(1) Error, inadvertencia, sorpresa, o negligencia excusable••

(2) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(3) Fraude (incluyendo el que hasta ahora se ha denominado intrínsico y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;

(4) Nulidad de la sentencia;

(5) La sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor; o

(6) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

El Tribunal Supremo de Puerto Rico ha expresado que aunque una moción de relevo de sentencia no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración, la misma debe ser interpretada liberalmente. Pardo v. Sucn. de Stella Royo, 145 D.P.R._(1974), 98 J.T.S. 80; Pagán Navedo v. Rivera Sierra, 97 J.T.S, 76; Olmeda Nazario v. Sueiro Jiménez, 123 D.P.R. 294, 299 (1989); Negrón Rivera v. Bonilla, ex parte, 120 D.P.R. 61, 73 (1987); Ríos v. Tribunal Superior, 102 D.P.R. 793, 794 (1974); Sucn. Bravo v. Srio. de Hacienda, 106 D.P.R. 672, 675 (1978).
Si la parte que solicita el relevo aduce una buena reclamación o defensa y el relevo no ocasiona perjuicio alguno a la parte contraria, el mismo debe ser concedido. Pardo Santos v. Sucn. Stella Royo, supra, a la pág. 1,213. Como regla general, la existencia de una buena defensa o reclamación debe siempre inclinar la balanza a favor de la reapertura. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. a la pág. 291; Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 507 (1982); Fine Art. v. Wallpaper v. Wolff, 102 D.P.R. 451, 459 (1974); J.R.T. v. Missy Mfg. Corp., 99 D.P.R. 805, 811 (1971).
*600La determinación de conceder el relevo de una sentencia está confiada a la discreción del Tribunal de Primera Instancia. Garriga Gordils v. Maldonado Colón, 109 D.P.R. 817, 822 (1980); Fine Art Wallpaper v. Wolff, supra, a la pág. 458 (1974); Southern Construction Corp. v. Tribunal Superior, 87 D.P.R. 903, 905 (1963).
Por otro lado, el origen de nuestra primera Ley de Usura, aprobada el 1 de marzo de 1902 y cuyo articulado se hizo formar parte del Código Civil mediante la Ley Núm. 48 de 28 de abril de 1930, fue una de las primeras aprobada bajo el régimen estadounidense en Puerto Rico. Sus antecedentes se trazan a la legislación vigente para aquella época en Estados Unidos. Perdomo v. Sucn. Matilde Cintrón, 114 D.P.R. 126, 132 (1983).
La Ley de Usura fue derogada mediante la Ley Núm. 1 de 15 de octubre de 1973, según enmendada, 10 L. P.R.A. see. 998 et seq., que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento y dispuso lo relativo a los intereses máximos a cobrarse por préstamos o prórrogas de dinero o mercancía, conforme de tiempo en tiempo lo determinara dicha Junta. Perdomo v. Sucn. Matilde Cintrón, supra. Posteriormente, y mediante el Art. 23 de la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como "Ley de la Oficina del Comisionado de Instituciones Financieras", 7 L.P.R.A. sees. 2001 et seq., dicha Junta fue suprimida y sus facultades fueron transferidas a la Junta Financiera creada mediante el Art. 8 de la Ley Núm. 4, supra, 7 L.P.R.A. sec. 2008.
Dicho precepto legal igualmente facultó a la Junta Financiera creada "...a fijar, regular, aumentar o disminuir; por reglamento, y durante el tiempo que ello fuera necesario, los tipos de interés o cargos máximos aplicables en determinadas transacciones económicas dentro del marco de cualquier sector; renglón o actividad del país...
En caso de que la Junta Financiera no reglamente sobre el particular, el Art. 1 de la Ley Núm. 1, supra, 10 L.P.R.A. sec. 998, dispone:

”Ninguna persona natural o jurídica podrá exigir o recibir en o por préstamos o prórrogas de dinero o mercancías o, en por cualquier clase de obligación, convenio o contrato, directa o indirectamente un tipo de interés mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio, obligación o contrato no exceda de $3,000.00 y de ocho (8) dólares anuales por cada cien (100) dólares, cuando exceda dicha cantidad."

El Art. 3 de dicha Ley establece que "[n]o obstante lo dispuesto en la see. 998 de este título y la see. 4591 del Título 31, se podrá exigir o recibir, en o por préstamos o prórrogas de dinero o mercancías o, en o por cualquier clase de obligación, convenio o contrato un tipo de interés mayor a las tasas máximas estipuladas en la see. 998 de este título..., siempre que se trate de tipo máximos de interés o cargos fijados por la Junta Financiera creada en la see. 2008 del Título 7".
Sin embargo, quedó claramente expuesta la intención del legislador de mantener con total virtualidad y vigencia las disposiciones del Código Civil que establecen la responsabilidad de carácter civil en que pueda incurrir cualquier persona en virtud de los artículos de dicho Código que tratan sobre la fijación de dicho interés. Así surge del Art. 8 de dicha ley, 10 L.P.R.A. see. 998 (g), que reza como sigue:

"Las disposiciones de este capítulo en nada afectan, modifican o alteran la responsabilidad de carácter civil en que pueda incurrir cualquier persona natural o jurídica en virtud de los artículos del Código Civil de Puerto Rico que tratan sobre la fijación del interés legal, y el modo de recuperar las cantidades pagadas de más sobre el mismo, entendiéndose, sin embargo, que la tasa de interés o cargos que pueda fijar la Junta o la determinación de la Junta relativa a no fijar tasas de interés y dejar el mercado a la libre competencia, en su caso, prevalecerá sobre lo dispuesto por dicho Código."

Por otro lado, la See. 3 de la Ley Núm. 3 de 14 de junio de 1980, según enmendada, 10 L.P.R.A. see. 998 *601(n) establece, en lo pertinente:

"Se adoptan las siguientes tasas de interés y cargos por financiamientos que servirán de máximo a cobrarse o exigirse en Puerto Rico en determinadas clases de crédito, con excepción de depósitos efectuados en bancos y otras instituciones financieras y con excepción también de aquellas ventas al por menor a plazo a las cuales les hayan sido fijados o se lo fijen en el futuro tasas máximas de interés y cargos por financiamiento a tenor con las disposiciones de las sees. 731 et seq. De este título:

(a)...

(c) Sobre préstamos personales.

(1) Adelantos en efectivo en tarjetas de crédito: 15% anual.

(2) Otros préstamos personales pagaderos en plazos mensuales: 9% interés anual computado sobre la cantidad del préstamo por el período completo del mismo (add-on).

(3) Otros préstamos personales pagaderos a la demanda: 15% de interés anual.

(d)...

(f) Préstamos u obligaciones no cubiertos por lo establecido en los incisos anteriores: 05% de interés anual.

(h) En caso de que un crédito esté cubierto por dos o más incisos de esta sección, la tasa de interés a cobrarse será aquella tipificada en el inciso que disponga la tasa menor, disponiendo que la sec. 998n(d) de este título siempre prevalecerá sobra las demás. ”

A su vez, la See. 4 de dicha ley establece:

“Las disposiciones de las secs. 998m y 998n de este lítulo continuarán en vigor hasta que la Junta Financiera creada por las sees. 2001 et seq. del Título 7, apruebe reglamentación con el propósito de enmendar las mismas."

Para efectos del caso de autos, en 1996, se aprobó el Reglamento Núm. 26A-1, "Reglamento para Enmendar el Reglamento 26-A", el cual entró en vigor el 4 de abril de 1996. El mismo desreglamentó, en forma temporera las tasas de interés fijadas para todos los préstamos, siendo derogada con efectividad el 30 de noviembre de 1997. A tales efectos, no se fijó una tasa de interés anual máxima, sino que las tasas de interés podrían pactarse conforme a la libre competencia.
IV
En su recurso, el señor Morales plantea que procedía el relevo de Sentencia, toda vez que la misma era nula por contravenir tanto el contrato como la estipulación habida entre las partes la ley y el orden público. A fin de sustentar su posición, señala que surge de la faz de la demanda que "la parte demandada con relación al primer pagaré, se comprometió a pagar la cantidad de mil trescientos ($1,300) mensuales por un período de 12 meses el cual terminaría el 3 de octubre de 1998...". Asimismo indica, según se desprende de la demanda, que "con relación al segundo pagaré, se obligó a pagar la cantidad de mil dólares ($1,000.00) mensuales por un período de 12 meses el cual terminaría el 14 de enero de 1999 y dichos pagos serían totalmente adjudicados como intereses". Sostiene que dichos pagos deben ser considerados como unos usureros, conforme el Art. 1649 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4591.
Por su parte, el señor Torres nos plantea que al transigir el caso, el señor Morales renunció a los *602planteamientos levantados en tomo a la defensa de usura. Asimismo, argumenta que por disposición de ley la defensa de usura no procede en el caso de autos, toda vez que el deudor es una corporación. Conviene, pues, examinemos por separado lo pactado en cada uno de los Pagarés.
A. Primer Pagaré
Este Pagaré fue otorgado el 2 de octubre de 1997, suscrito por el señor Morales en su carácter personal. La suma principal del mismo es de $43,275.00 y vencedero el 3 de septiembre de 1998. Dicho Pagaré reza en lo pertinente:
"POR VALOR RECIBIDO, EL SEÑOR ANIBAL MORALES GARCIA, SEGURO SOCIAL NUMERO 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, MAYOR DE EDAD, CASADO CON AUREA ESTHER RIVERA DIAZ, COMERCIANTE Y VECINO DE YAUCO, PUERTO RICO, SE OBLIGA A SATISFACER A LOS SEÑORES HARRY TORRES MUÑIZ Y MARIA CRISTINA MONTAÑEZ AYALA, SEGURO SOCIAL 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 Y 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, RESPECTIVAMENTE, MAYORES DE EDAD, CASADOS ENTRE SI, PROPIETARIOS Y VECINOS DE GUANICA, PUERTO RICO, O A SU ORDEN, LA SUMA PRINCIPAL DE CUARENTA Y TRES MIL DOSCIENTOS SETENTA Y CINCO DOLARES ($43,275.00) CON INTERESES DESDE LA FECHA ANTES SEÑALADA A RAZON DEL DIEZ PORCIENTO (10%) ANUAL SOBRE DICHO PRINCIPAL. DICHO PRINCIPAL E INTERESES SERAN PAGADOS EN LA RESIDENCIA DE LOS ESPOSOS TORRES MUÑIZ Y MONTAÑEZ AYALA O EN CUALQUIER OTRO SITIO QUE EL TENEDOR DESIGNE POR ESCRITO, EN PLAZOS MENSUALES DE MIL TRESCIENTO [SIC] DOLARES ($1,300.00) COMENZANDO EL DIA TRES (3) DE NOVIEMBRE DE 1997 Y SUCESIVAMENTE EL DIA TRES (3) DE CADA MES SUBSIGUIENTE HASTA EL DIA TRES (3) DE OCTUBRE DE 1998 QUE HARA UN PAGO FINAL DE TREINTA Y TRES MIL TRESCIENTOS DOS DOLARES CON CINCUENTA CENTAVOS ($33,302.50)...
, EN LA EVENTUALIDAD DE QUE LOS ACREEDORES TUVIESEN QUE RECLAMAR ANTE EL TRIBUNAL DE JUSTICIA EL PAGO DE ESTA DEUDA, EL DEUDOR AUTORIZA EXPRESAMENTE QUE LOS ACREEDORES EMBARGUEN EN PRIMER LUGAR LOS SOLARES I Y II DEL BLOQUE A CON CABIDAS DE 1351.00 Y 900.00 METROS, RESPECTIVAMENTE, UBICADOS EN LA URB. ESTANCIAS DE SANTA MARIA, BO. BARINAS, YAUCO, PUERTO RICO, SEGUN PERMISO DE URBANIZACION APROBADO POR A.R.P.E. EL 10 DE JULIO DE 1997." (Enfasis nuestro.)
Dirigiendo nuestra atención ahora al interés máximo permisible en préstamos personales para la fecha en que se suscribió el pagaré que nos ocupa, 8 de octubre de 1997, conforme lo dispuesto en el Reglamento Núm. 21A-1, no había una tasa de interés anual máxima, sino que las tasas de interés podrían pactarse conforme a la libre competencia. En el caso de autos, el interés estipulado en el pagaré fue de un diez porciento (10%). Cabe señalar que, aun cuando la Junta Financiera no hubiese reglamentado al efecto, tampoco el interés pactado excedía el máximo permisible por la Ley Núm. 3, supra.
B. Segundo Pagaré
Por otro lado, este otro Pagare fue otorgado el 14 de febrero de 1998 y vencedero el 28 de enero de 1999. El mismo fue suscrito por el señor Morales en su carácter de Presidente y en representación de Cajava Development, Inc. Dicho Pagaré dispone, en lo pertinente:
"YO, ANIBAL MORALES GARCIA, SEGURO SOCIAL NUMERO 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, PRESIDENTE DE CAJAVA DEVELOPMENT, INC., Y EN REPRESENTACION DE DICHA CORPORACION, MAYOR DE EDAD, CASADO, PROPIETARIO Y VECINO DE LA CALLE PACHECO NUMERO 26, YAUCO, PUERTO RICO, DEBEMOS Y PAGAREMOS A LA ORDEN DE DON HARRY TORRES MUÑIZ, LA CANTIDAD DE TREINTA SIETE MIL DOLARES ($37,000.00), POR VALOR RECIBIDO Y PAGADEROS EN LA FECHA ARRIBA INDICADA.

*603
ESTE PAGARE SE SUSCRIBE BAJO LAS SIGUIENTES CONDICIONES:

A) EL DEUDOR PAGARA LA CANTIDAD DE MIL DOLARES ($1,000.00) MENSUALES PARA AMORTIZAR LOS INTERESES HASTA SU SALDO TOTAL DE DOCE (12) PLAZOS DE ESA CANTIDAD.

B) EL PRINCIPAL SERA PAGADERO EN LA FECHA DE SU VENCIMIENTO, PERO SI EL DEUDOR SALDARE LA DEUDA ANTES DE LOS DOCE MESES, SE LE DEVOLVERA CUALQUIER CANTIDAD QUE HAYA PAGADO POR ADELANTADO POR CONCEPTO DE INTERESES.

C) EL DEUDOR DA EN GARANTIA DE LA DEUDA EL SOLAR NUMERO UNO (1) (COMERCIAL), BLOQUE "C" DEL PROYECTO RESIDENCIAL EN ESTANCIAS DE SANTA MARIA DEL BARRIO BARINAS DE YAUCO, PUERTO RICO, Y EL CUAL SE COMPONE DE MIL QUINIENTOS SESENTA METROS (1,560 MTS.) Y EL CUAL ESTA EN PROCESO DE SEGREGACION DE UNA FINCA PRINCIPAL.

TAMBIEN DA EN GARANTIA UNA MAQUINA MARCA CATERPILLAR DE CADENA TABLILLA NUMERO 99J347D-66.

D) EL PRINCIPAL DE LA OBLIGACION SERA PAGADERO EN O ANTES DE LA FECHA DEL VENCIMIENTO DE ESTE DOCUMENTO.

SE LE HAN HECHO LAS ADVERTENCIAS LEGALES, TANTO AL DEUDOR COMO AL ACREEDOR, DE QUE POR CARECER LA GARANTIA INMUEBLE ANTES MENCIONADA DE UNA SEGREGACION QUE PUEDA INSCRIBIRSE EN EL REGISTRO DE LA PROPIEDAD, NO SE OTORGA UNA ESCRITURA PUBLICA PARA CONSTITUIR LA HIPOTECA PERTINENTE...". (Enfasis en el original.)
Habida cuenta de que en dicho Pagaré compareció como deudora una corporación, conviene repasar lo dispuesto por la Ley Núm. 144 de 10 de agosto de 1995, según enmendada, conocida como "Ley General de Corporaciones de 1995", sobre el tema que nos atañe: la usura.
Sobre este particular, la Ley Núm. 144, supra, que comenzó a regir a partir de 1 de enero de 1996, dispone en su Art. 12.09:
"No obstante cualquier limitación o penalidad establecida por ley, cualquier corporación que tome dinero a préstamo podrá contratar, incurrir en obligaciones y tomar dinero a préstamo, bien en el Estado Libre Asociado o en cualquier otro sitio, a cualquier tasa de interés que considere aceptable. Ningún deudor de esta clase, sea corporación doméstica o una corporación foránea, podrá invocar estatuto alguno contra la usura en un procedimiento o en una acción legal establecida con elfin de obligar al pago o cumplimiento de cualquier obligación que surja de un préstamo de tal naturaleza, esté o no la obligación representada por cualquier bono, pagaré, contrato u otro escrito firmado, asumido, garantizado por tal deudor o cualquier sucesor o cesionario del mismo. En tal virtud, no se castigará como delito el exigir o recibir intereses a cualquier tasa así convenida, ni podrá interponerse, por razón de usura, recurso alguno para recobrar cantidad alguna pagada en exceso del interés máximo fijado por ley o para hacer efectiva cualquier otra penalidad civil." (Enfasis nuestro.) 14L.P.R.A.§ 3134.
Como podemos colegir del precepto legal reseñado, queda meridianamente claro la improcedencia de cualquier reclamo de usura que fuere planteada por una corporación. Por lo tanto, resolvemos que no procede la defensa de usura en este Pagaré, siendo el mismo válido para todos los efectos de ley, al igual que el otro Pagaré.
V
Por otro lado, a igual conclusión llegaríamos al aplicar las normas establecidas en nuestra jurisprudencia por el Tribunal Supremo en lo referente a las estipulaciones. Veamos.
*604Está resuelto que, como regla general, los jueces aceptarán los convenios y estipulaciones a los que lleguen las partes para finalizar un pleito o un incidente dentro del mismo, cuando éstos no atenten contra la moral o el orden público". Negrón Rivera Bonilla, Ex-parte, 120 D.P.R. 61, 76 (1987); P.R. Class Corp. v. Trib. Superior, 103 D.P.R. 223, 231 (1975). "Una vez suscrita por las partes y aceptada por el tribunal, la estipulación que finaliza un pleito o, como en este caso, un incidente dentro del mismo, constituye un contrato de transacción que obliga a las partes y tiene efecto de cosa juzgada". Rodríguez v. Zayas Martínez, 133 D.P.R. 406 (1993), 93 J.T.S. 75; Magee v. Alberro, 126 D.P.R. 228, 232 (1990); Sucn. Román v. Shelga Corp., 111 D.P.R. 782 (1981).
"Las estipulaciones son favorecidas judicialmente, y como norma general, los jueces deben aprobar los convenios a los que lleguen los litigantes, ya sea para finalizar un pleito o un incidente dentro del mismo. Tras la aprobación de la estipulación por el tribunal, ésta constituye un contrato de transacción que obliga a las partes, claro está, si están presentes los requisitos esenciales del contrato de transacción, es decir, si existe una relación jurídica incierta y las partes se hacen concesiones recíprocas". Ramos Rivera v. E.L.A., 148 D.P.R._ (1999), 99 J.T.S. 63.

"En vista de que una vez aprobada por el tribunal, la estipulación que finaliza un pleito, o un incidente dentro del mismo, tiene el alcance de una transacción y de que la validez de una transacción no depende, necesariamente, de que la misma sea realizada de acuerdo a derecho, resulta ineludible concluir que las estipulaciones tampoco tienen que ser compatibles con las normas jurídicas, aun si mediante las mismas se reconocen derechos e independientemente de que el juzgador esté en desacuerdo con lo estipulado. Resolver lo contrario e imponer a los litigantes la obligación de estipular de conformidad con el derecho vigente o de la misma manera en que lo haría el tribunal, convertiría las estipulaciones en actos inútiles, desalentaría su uso y destruiría su propósito fundamental de evitar dilaciones, inconvenientes, gastos y hacer justicia rápida y económica. Sin embargo, en vista de que una estipulación no tiene que concordar con las normas jurídicas vigentes, la misma no tendrá autoridad de cosa juzgada en una segunda acción que verse sobre un asunto o controversia ajeno al que fue objeto de estipulación". Id.

Al aplicar las normas anteriormente esbozadas al caso ante nos, resolvemos que el tribunal de instancia no erró al denegar la solicitud de relevo de sentencia. Luego de examinar los escritos que obran en el expediente, no hemos encontrado fundamento alguno que afectara la validez de la estipulación realizada por las partes y, por ende, que justificara que dicho tribunal se desviara de la norma general y se negara a aprobarla.
Las partes en el caso ante nos, decidieron poner fin al pleito con una estipulación mediante la cual se reconocía la existencia de un derecho: el derecho del señor Torres a cobrar una deuda de $55,000.00 (según estipulada) que estaba vencida, siendo la misma líquida y exigible. Ello a cambio de no embargar los tres (3) solares dados en garantía, sin imposición alguna de gastos, costas u honorarios de abogado, entre otros. Dicha estipulación se realizó voluntariamente; de los autos no surge que en el consentimiento prestado por las partes haya mediado dolo, error, violencia o intimidación. La misma no es contraria a la moral, ni al orden público. Cabe añadir que ninguna de las partes impugnó la estipulación durante la vista del caso. Por lo tanto, el tribunal debió resolver de conformidad con la regla general y aprobar la estipulación que voluntariamente realizaron las partes, sin entrar en los méritos del mismo o si el mismo era o no compatible con las normas jurídicas. Ramos Rivera v. E.L.A., supra.
Recapitulando, habiendo estipulado las partes un diez porciento (10%) de interés sobre el principal adeudado conforme el ordenamiento jurídico, resulta improcedente la argumentación del señor Morales a los efectos de que se pactaron en el Pagaré y se impusieron en la Sentencia que es objeto de impugnación, intereses de naturaleza usurarios. Siendo ello así, y ausentes las circunstancias de excepción que justificarían un pronunciamiento del Tribunal para relevar a los peticionarios de los efectos de la misma, resulta improcedente lo solicitado. Lo anterior toma mayor relevancia, si dicha Sentencia fue producto de una estipulación hecha por las partes en corte abierta de forma libre, voluntaria y con conocimiento de causa. Resolvemos, en *605consecuencia, que el tribunal recurrido dictaminó con corrección al declarar sin lugar la moción de relevo de sentencia que dio base a la resolución recurrida.
Por último, apropiado nos resulta señalar que la función revisora del tribunal se da contra el dictamen recurrido y no contra los fundamentos expresados en el mismo. Cintrón Santana v. Betancourt Lebrón, 131 D.P. R. 1 (1992).
VI
Por los fundamentos expresados anteriormente, denegamos la expedición del auto solicitado.
Así lo acordó el Tribunal y lo certifica la señora Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2002 DTA 1
1. Con anterioridad, la tasa de interés máxima fijada por la Junta Financiera en el Reglamento aprobado a esos efectos era de diez y siete porciento (17%).
2. Ninguno de estos pagarés fueron inscritos en el Registro de la Propiedad correspondiente.
3. En este Pagaré, los instereses no fueron pactados a razón de una tasa porcentual, sino que los mismos consisten de un pago mensual.
4.14 L.P.R.A. § 2601 y ss.