PUERTO RICO PRODUCTION CREDIT ASSOCIATION, recurrida, *v.* EL REGISTRADOR DE LA PROPIEDAD DE PONCE II, recurrente.

*Número:* CE-88-175 *Resuelto:* 24 de enero de 1989

*José Uriel Zayas Bonilla, Registrador de la Propiedad,* recurrente; *Antonio Zapater Cajigas,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El Registrador de la Propiedad, Sección Ponce II, mediante recurso gubernativo de oficio nos plantea la controversia jurídica siguiente: ¿procede el embargo sobre bienes inmuebles para el cobro de intereses en exceso de los garantizados con hipoteca en un pleito de ejecución por la vía ordinaria? Expongamos los hechos que suscitan esta interrogante.

## I

La recurrida, Puerto Rico Production Credit Association (P.R.P.C.A.), concedió a los esposos Miguel Ángel Rodríguez Rivera y Gladys Mabel Centeno ciertos y determinados préstamos con garantías hipotecarias en dos (2) inmuebles.

Por incumplimiento de los deudores Rodríguez-Centeno, la acreedora P.R.P.C.A. instó procedimiento de ejecución de hipoteca por la vía ordinaria, en que les reclamó el pago del principal más los intereses adeudados. Anotó el correspondiente aviso de demanda sobre las dos (2) propiedades que garantizaban la hipoteca objeto de ejecución. En orden de inscripción, esas propiedades tienen los gravámenes siguientes:

| Finca 2,938 | | Tomo 267 | Folio 230 |
|---|---|---|---|
| _Hipoteca_ | _por_ | _a favor de_ | _Fecha Presentación_ |
| Primera | $ 5,500.00 | Julián H. Zimmerman | 24 junio 1960 |
| Segunda | $ 17,000.00 | PR Production Credit Association | 9 marzo 1971 |
| Tercera | $ 33,000.00 | PR Production Credit Association | 9 nov. 1971 |
| Cuarta | $ 50,000.00 | Portador | 27 abril 1983 |
| Aviso de Demanda CS-79-8126 (Tribunal Superior de PR) | | PR Production Credit Association | 8 oct[.] 1979 |

Finca 118 Tomo 1,556 Folio 153

| *Hipoteca* | *por* | *a favor de* | *Fecha Presentación* |
|---|---|---|---|
| Primera | $ 15,000.00 | Federal Land Bank of Baltimore | 26 nov. 1965 |
| Segunda | $ 10,500.00 | PR Production Credit Association | 3 mayo 1967 |
| Tercera | $ 11,000.00 | PR Production Credit Association | 17 abril 1969 |
| Cuarta | $ 48,000.00 | PR Production Credit Association | 2 sept. 1970 |
| Quinta | $ 33,000.00 | PR Production Credit Association | 9 nov. 1971 |
| Sexta | $100,000.00 | PR Production Credit Association | 30 mayo 1979 |
| Aviso de Demanda 80–2242 (Corte de Distrito de EU) | | Federal Land Bank of Baltimore | 27 oct. 1980 |
| Aviso de Demanda CS-79-8126 (Tribunal Superior de PR) | | PR Production Credit Association | 8 oct. 1979 |
| Embargo | $ 1,840.61 | ELA de Puerto Rico | 28 nov. 1980 |
| Embargo | $ 292.29 | ELA de Puerto Rico | 28 nov. 1980 |

Alegato del promovente, pág. 3.

Como el montante de intereses adeudados ascendía a $114,782.33, en contraste con la suma asegurada hipotecariamente de sólo $14,340, P.R.P.C.A. pidió el aseguramiento vía embargo de una suma adicional. El tribunal accedió y, mediante orden, aumentó el monto del embargo en $90,000; distribuido en $20,000 y $70,000 sobre las fincas 2938 y 118, respectivamente.

El Registrador *denegó* la inscripción del mandamiento judicial de embargo. A su entender, los intereses objeto del embargo excedían los garantizados por la hipoteca inscrita, lo que no está permitido por los Arts. 166, 167, 190 y 191 de la

Ley Hipotecaria y del Registro de la Propiedad (en adelante Ley Hipotecaria), 30 L.P.R.A. secs. 2562, 2563, 2609 y 2610.

## II

Primeramente, reiteramos que la "función calificadora del Registrador . . . [e]s función trascendente sin la cual no podría cumplirse el principio de legalidad que gobierna el sistema inmobiliario registral. La calificación es la facultad por excelencia del Registrador que al ejercitarla realiza el propósito de que el Registro encierre sólo actos válidos y derechos perfectos". *L. Dershowitz & Co., Inc. v. Registrador*, 105 D.P.R. 267, 273 (1976). Ahora bien, cuando se trata de documentos judiciales, la propia Ley Hipotecaria le asigna al Registrador una facultad calificadora *más limitada*. Así, el Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267, en lo pertinente, dispone que:

> En cuanto a los documentos expedidos por la autoridad judicial, la calificación expresada se limitará: (1) a la jurisdicción y competencia del tribunal; a la naturaleza y *efectos de la resolución dictada* si ésta se produjo en el juicio correspondiente; y si se observaron en él los trámites y preceptos esenciales para su validez; (2) las formalidades extrínsecas de los documentos presentados; y (3) a los *antecedentes del Registro*. (Énfasis suplido.)

El reglamento es más específico aún:

> Las determinaciones judiciales respecto a *los hechos y derechos* que corresponden a las partes envueltas en un litigio a tenor con el artículo 67 de la Ley [30 L.P.R.A. sec. 2270] no podrán ser objeto de calificación por el Registrador sin perjuicio a lo dispuesto en el artículo 64 de la Ley [30 L.P.R.A. sec. 2267] tocante a los documentos expedidos por la autoridad judicial. (Énfasis suplido.) Art. 79.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-79.1, edición especial.

Antes de la aprobación de la nueva Ley Hipotecaria, en *Ruiz-Sierra v. Registrador*, 103 D.P.R. 578, 579–580

(1975), en ocasión del Registrador negarse a anotar un mandamiento de embargo amparado en una disposición de la ley, dijimos que al "Registrador le está vedado considerar los fundamentos intrínsecos de la sentencia o sustituir su criterio por el del tribunal en cuanto concierne a sus determinaciones de hecho. *Bermúdez* v. *Registrador*, 74 D.P.R. 151, 155 (1952). La calificación no ha de estar gobernada por el ardor del reformista sino por la mesura del jurista. *Banco de San Juan* v. *Registrador*, 103 D.P.R. 417 *in fine*, (1975)".

Más recientemente, resolvimos que la "Ley Hipotecaria de 1979 recoge en su Art. 64 los Arts. 18, 100 y 101 de la antigua Ley Hipotecaria para las Provincias de Ultramar de 1893 (30 L.P.R.A. sec. 2267). En su nueva redacción el Art. 64 no siguió las corrientes modernas que confieren al Registrador amplísimos poderes en su función calificadora. E. Vázquez Bote, *La reforma hipotecaria: Dictamen sobre el P. del S. 792 y P. de la C. 915, relativos a un proyecto de ley hipotecaria y del Registro de la Propiedad*, XIII Rev. Jur. U.I.[A.] 491, 547–548 (1979); [R.M.] Roca Sastre, [*Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II,] pág. 258; [J.M.] Chico y Ortiz, [*Estudios sobre Derecho Hipotecario*, Madrid, Ed. Cometa, 1982, T. II,] pág. 651". *Mojica Sandoz* v. *Bayamón Federal Savs.*, 117 D.P.R. 110, 126 (1986).

█ En resumen, en lo relativo a la calificación de documentos judiciales, el Art. 64 de la Ley Hipotecaria, *supra*, y la Sec. 2003–79.1 de su reglamento, *supra*, incorporaron el enfoque restrictivo jurisprudencial. *Informe de la Cámara de Representantes sobre el Proyecto del Senado 792*, XIV Rev. Jur. U.I.A. 391, 405 (1979); *Ponencia del Departamento de Justicia en torno al Proyecto del Senado 792 y al Proyecto de la Cámara 915*, XIV Rev. Jur. U.I.A. 419, 435 (1979). De acuerdo con esta visión legislativa, debe quedar claro que el Registrador de la Propiedad no puede ser juez de jueces. Después de todo, debe recordarse el principio general de que

el registro no da ni quita derechos. Por ende, el principio de legalidad consagrado en el Art. 64 de la Ley Hipotecaria, *supra*, hay que interpretarlo en armonía con esa máxima y propósito legislativo de facilitar el acceso al registro de documentos, en particular, las providencias judiciales.

En el recurso ante nos atendemos su instancia *de oficio*, únicamente a los fines de examinar los efectos del mandamiento de embargo sobre los derechos inscritos antes y después de la hipoteca en ejecución.

### III

La constitución de una hipoteca a favor de un crédito fructífero, en esencia, plantea si todos los intereses que se devenguen quedan garantizados con dicho gravamen o si, por el contrario, existe algún límite. La cuestión requiere discutir y distinguir los tres (3) sistemas diferentes sobre garantías, a saber: *garantía indefinida, garantía de tope máximo* y *garantía de ampliación de hipoteca*. En el primero, *sistema de garantía indefinida*, "[l]a hipoteca asegura ilimitadamente todos los intereses que devengue el crédito hipotecario. El crédito accesorio por intereses, cualquiera que sea la cantidad a que ascienda, es colocado bajo el mismo rango que el crédito principal". R.M. Roca Sastre, *Derecho Hipotecario*, 6ta ed., Barcelona, Ed. Bosch, 1968, T. IV, Vol. 1, pág. 507. Bajo el segundo, *sistema de tope máximo*, "[l]a hipoteca por el capital, únicamente se extiende *ope legis* a garantizar determinada suma o montante de intereses. Dicho tope puede consistir en un determinado número de anualidades de intereses o en un tanto por ciento global sobre el capital; generalmente se adopta el primero". (Énfasis y escolio omitidos.) Íd., pág. 508. Finalmente, *el sistema de ampliación de hipoteca*, "garantiza únicamente el capital del crédito, pero no los intereses; no obstante, como a cada vencimiento de éstos surge un nuevo crédito derivado del principal, se atribuye al acreedor la facultad de exigir que se le

constituya una nueva hipoteca de ampliación, por todos los intereses impagados, y así sucesivamente". (Énfasis suprimido.) Íd., pág. 509.

▪ Nuestra Ley Hipotecaria, de acuerdo con la tradición española, adopta un sistema ecléctico. Según las circunstancias reinantes prevalecerá uno u otro de los sistemas antes definidos. Así, mientras no haya un tercero que pueda resultar perjudicado —cuando después de constituirse la hipoteca no se haya otorgado actos de enajenación o gravamen de la finca hipotecada— impera el sistema de *garantía indefinida*. *Ponce Federal Savings v. Registrador*, 89 D.P.R. 882, 887 (1964); *Díaz v. Quiñones*, 68 D.P.R. 249, 258 (1948).

▪ El Art. 190 de nuestra Ley Hipotecaria, 30 L.P.R.A. sec. 2609, expresamente incorpora este sistema de garantía indefinida. Dispone así:

> Se considerará asegurado con la hipoteca el interés del préstamo en la forma que prescriben las secs. 2562 y 2563 de este título únicamente cuando la estipulación y cuantía de dicho interés resulten de la inscripción misma. *El acreedor hipotecario podrá repetir contra los bienes hipotecados para el pago de los intereses vencidos, cualquiera que sea la época en que deba verificarse el reintegro del capital; mas si hubiere un tercero interesado en dichos bienes, a quien pueda perjudicar la repetición, no podrá extender la cantidad que por ella se reclama de la garantizada con arreglo a la sec. 2562 de este título.* (Énfasis suplido.)

Su justificación, según Roca Sastre, descansa en el supuesto de "que es natural que la garantía de lo principal se extienda a lo accesorio, de igual manera que ocurre con la extensión objetiva de la hipoteca. Constando en el Registro la cuantía del crédito y el tipo de interés que produzca, quedan suficientemente cumplidas las exigencias del principio de especialidad hipotecaria". Roca Sastre, *op. cit.*, págs. 507–508.

240

■ Las disposiciones aludidas en el Art. 190 de la Ley Hipotecaria antes citado recogen, respectivamente, las características medulares de los dos (2) sistemas restantes. Así, el Art. 166 de la Ley Hipotecaria señala:

Salvo pacto en contrario, la hipoteca constituida a favor de un crédito que devengue interés sólo asegurará, con perjuicio a tercero, además del capital, los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente.

En ningún caso podrá estipularse que la hipoteca asegure intereses por un plazo superior a cinco años. Cuando se fije en la escritura una cantidad global para responder del pago de intereses no podrá el mismo exceder del importe correspondiente a los intereses de cinco anualidades. 30 L.P.R.A. sec. 2562.

Estos *topes* persiguen eliminar la incertidumbre a la que se puede enfrentar un tercero poseedor de la finca o el titular de un nuevo derecho real sobre ella. Con el máximo de períodos de interés que pueden garantizarse, se tiene la seguridad de saber exactamente de cuánto responde la cosa hipotecada. *Nueva Enciclopedia Jurídica*, Barcelona, Ed. Francisco Seix, 1962, T. XI, págs. 73–74.

■ Por su parte, el Art. 167 de la Ley Hipotecaria, *supra*, admite la posibilidad de obtener una ampliación de la garantía respecto de los intereses devengados que no resulten asegurados con la hipoteca. Dispone así:

Para asegurar los intereses vencidos y no satisfechos que no estuvieren garantizados conforme a la sección anterior el acreedor podrá exigir del deudor ampliación de la hipoteca sobre los mismos bienes hipotecados. Esta ampliación no perjudicará en ningún caso los derechos reales inscritos con anterioridad a ella. Si la finca hipotecada no perteneciere al deudor no podrá el acreedor exigir que se constituya sobre ella la referida ampliación, pero podrá ejercitar igual derecho respecto a cualesquiera otros bienes inmuebles o derechos del deudor que puedan ser hipotecados.

Este último sistema es de muy poco uso debido a que exige que el acreedor reclame la constitución de una hipoteca especial cada cierto período de tiempo, tarea que puede resultar sumamente complicada e impracticable. "Además, como entre la inscripción de la hipoteca principal y la de esta hipoteca ampliatoria, pueden haberse constituido otras intermedias y hasta haberse enajenado la finca gravada, entonces surge el problema de la prelación que deba atribuirse a dicha hipoteca especial por intereses. Si surte efectos con el mismo rango de la hipoteca principal, perjudica a dichos posteriores adquirentes, con lo cual el sistema viene a transformarse en el primero, pero con complicaciones; en cambio si sólo produce efectos desde la fecha en que la hipoteca ampliatoria se inscribe, puede ésta quedar fácilmente inutilizada, resultando casi inoperante." (Énfasis suprimido.) Roca Sastre, *op. cit.*, pág. 509.

No obstante, debe recordarse que la acción real no es la única que puede ejercitar el acreedor para reclamar los intereses que carezcan de garantía. El Art. 191 de la propia Ley Hipotecaria, 30 L.P.R.A. sec. 2610,[1] reconoce la acción personal. Sólo no prosperará cuando las partes hayan pactado válidamente en la escritura de constitución de hipoteca voluntaria que la obligación garantizada se limita a los bienes hipotecados ("pacto de concreción").[2] *Campos del*

---

[1] "La parte de intereses que el acreedor no pueda exigir por la acción real hipotecaria podrá reclamarla del obligado por la personal, salvo en el caso previsto en la sec. 2603 de este título." Art. 191 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2610.

[2] El *pacto de concreción* aparece descrito en el Art. 184 de la Ley Hipotecaria, el cual dispone lo siguiente:

"No obstante lo dispuesto en la sec. 2552 de este título, podrá válidamente pactarse en la escritura de constitución de la hipoteca voluntaria que la obligación garantizada se haga solamente efectiva sobre los bienes hipotecados.

"En este caso la responsabilidad del deudor y la acción del acreedor, por virtud del préstamo hipotecario, quedarán limitadas al importe de los bienes hipotecados, y no alcanzarán a los demás bienes del patrimonio del deudor.

*Toro v. Ame. Transit Corp.*, 113 D.P.R. 337 (1982). La acción personal tiene apoyo en el principio de responsabilidad patrimonial universal consagrado en el Art. 1811 del Código Civil, preceptivo de que "[d]el cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros". 31 L.P.R.A. sec. 5171.

## IV

La recurrida P.R.P.C.A. invoca contra este trasfondo estatutario y doctrinario la Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III,(³) para impugnar la calificación del Registrador de la Propiedad. Sostiene que las disposiciones de la Ley Hipotecaria no le impiden obtener —*en el mismo pleito de ejecución de hipoteca*— una orden de embargo para asegurar su derecho al cobro de intereses en descubierto. A juicio suyo, una vez salvados o respetados los derechos de terceros, la negativa a inscribir la orden de embargo vulnera el principio cardinal, en materia procesal, de lograr el máximo resultado con el mínimo empleo de actividad procesal.

Por su parte, el Registrador de la Propiedad argumenta que al haber P.R.P.C.A. optado por la acción real hipotecaria

---

"Cuando la hipoteca así constituida afectase a dos o más fincas y el valor de alguna de ellas no cubriese la parte del crédito de que responda, podrá el acreedor repetir por la diferencia exclusivamente contra las demás fincas hipotecadas, en la forma y con las limitaciones establecidas en la sec. 2568 de este título." 30 L.P.R.A. sec. 2603.

(³) "En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder *el embargo*, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial." (Énfasis suplido.) 32 L.P.R.A. Ap. III, R. 56.1.

mediante la vía ordinaria —y mantener el rango que surge del registro— le aplican de forma estricta los artículos precitados de la Ley Hipotecaria. Si hubiera acudido a la acción personal —demanda en cobro de dinero— señalada en el Art. 191, aunque no habría límite en cuanto a los intereses embargables, hubiese perdido el rango de la hipoteca inscrita.

Tiene razón la recurrida P.R.P.C.A. La negativa del Registrador de la Propiedad no toma en cuenta la naturaleza *mixta* de la acción de ejecución de hipoteca por la vía ordinaria. Pasa por alto que en una relación jurídica de crédito hipotecario coexisten dos (2) elementos: el *crédito* y la *hipoteca.* "[E]l elemento crédito origina la correspondiente acción personal, que conduce o puede conducir para su efectividad a la actuación procesal dirigida a la realización dineraria en los bienes necesarios del patrimonio del deudor, o de los fiadores o responsables subsidiarios, siempre, empero, que se prescinda de la hipoteca adjunta. Del elemento garantizador de la hipoteca deriva la correspondiente responsabilidad real, cuya efectuación, siempre a base de contemplar también el crédito asegurado, se consigue por el ejercicio de la acción hipotecaria, de carácter real, y hecha valer a través de una variedad de procedimientos de ejecución en nuestro sistema." (Énfasis suprimido.) R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1021.

Nuestro ordenamiento permite tres (3) medios para la realización del crédito hipotecario: el *ejecutivo sumario*, la *acción civil hipotecaria* y la *acción civil ordinaria en cobro de dinero. C.R.U.V. v. Torres Pérez*, 111 D.P.R. 698, 699 (1981). La acción de ejecución de hipoteca por la vía ordinaria —que es la aquí incoada— es de naturaleza mixta, es decir, real y personal. *Vda. de Carlo v. Toro*, 99 D.P.R. 200,

217 (1970). El acreedor tiene a su favor ambas acciones. Al proceder por la vía ejecutiva, decide cuál de las dos (2) prefiere. Aunque son acciones diferentes, por lo general aparecen confundidas cuando coinciden el propietario de la finca hipotecada y el deudor personal.

La acumulación de ambas acciones es perfectamente legítima en un pleito de ejecución de hipoteca, cosa que no es posible en el procedimiento judicial *sumario* por ser éste "pur[o] proces[o] de ejercicio de la acción hipotecaria". Roca Sastre, *Derecho Hipotecario*, 7ma ed., *op. cit.*, pág. 1046. Por tal razón, nuestra casuística informa que la reclamación de intereses no garantizados hipotecariamente en un procedimiento ejecutivo sumario constituye un error sustancial en perjuicio de los derechos del deudor que invalida el procedimiento seguido. *Ríos v. Banco Popular*, 81 D.P.R. 378 (1959); *Sucn. Ramírez v. Tribl. Superior*, 81 D.P.R. 357 (1959); *Piovanetti v. Vivaldi*, 80 D.P.R. 108 (1957). De acuerdo con Roca Sastre, "[e]sta deducción simultánea de acciones [la real y la personal] no sólo es conveniente cuando *el deudor personal y el propietario de la cosa hipotecada son una misma persona*, sino cuando son dos personas distintas y *la efectiva responsabilidad hipotecaria no cubre el volumen del débito existente, cosa muy posible* no sólo por aumento de dicho volumen (por sobrepasar el máximo garantizado, o *por acumulación de intereses* o aumento de costas previstas), sino también por insuficiencia de la cosa hipotecada. Entonces, *mediante el embargo puede procederse a la traba* de otros bienes o también *de la misma cosa hipotecada en cantidad que supere el importe de la anterior responsabilidad hipotecaria*". (Énfasis suplido.) Roca Sastre, *Derecho Hipotecario*, 7ma ed., *op. cit.*, pág. 1046.

En *Calo Rivera v. Reyes*, 115 D.P.R. 123, 127 (1984), nos pronunciamos a favor de la acumulación de ac-

ciones por el acreedor. Insistimos allí que nuestro procedimiento civil propicia y estimula la acumulación de reclamaciones. 32 L.P.R.A. Ap. III, R. 14.

## V

El *embargo ejecutivo* —según Guillermo Cabanellas—[4] es la "[r]etención . . . que de los bienes del deudor se efectúa en el procedimiento ejecutivo; a fin de, con ellos o con el producto de la venta de los mismos, satisfacer la incumplida obligación a favor del acreedor que posea título con *ejecución aparejada*". (Énfasis en el original.) G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20ma ed., Buenos Aires, Ed. Heliasta, 1981, T. III, pág. 409.

 Nuestra Regla 56.1 de Procedimiento Civil, *supra*, armoniza con el esquema hipotecario expuesto. A su amparo, el embargo de bienes de un demandado constituye una de las medidas provisionales a que puede recurrir un litigante que ha obtenido, o que anticipa obtener, una sentencia a su favor y quiere asegurar su efectividad. *Soc. de Gananciales v. Rodríguez*, 116 D.P.R. 468, 470 (1985). "Puede concederse sin fianza si se gestiona después de sentencia (R. 56.3), en cuyo caso puede autorizarse a moción de parte, y se efectuará, en caso de bienes inmuebles, anotándolo en el Registro de la Propiedad y notificándolo al demandado." *Albaladejo v. Vilella Suau*, 106 D.P.R. 331, 335 (1977). Es, pues, perfectamente lícito que un acreedor recurra a una medida cautelar como lo es el embargo para proteger sus derechos y evitar que la sentencia obtenida se torne inoficiosa.

En el caso de autos, no es válida la disyuntiva propuesta por el Registrador de la Propiedad de que al optar la acree-

---

[4] Véanse, además: J. Carreras, *El Embargo de Bienes*, Barcelona, Ed. Bosch, 1957; M. Ortells Ramos, *El Embargo Preventivo*, Barcelona, Librería Bosch, 1984.

dora por la acción real hipotecaria mediante la vía ordinaria —y mantener el rango que ocupa en el registro— aplican de manera estricta los artículos citados de la Ley Hipotecaria. Por el contrario, si se recurre a la acción personal (cobro de dinero) no hay límite en cuanto a los intereses embargables, pero se pierde el rango de la hipoteca inscrita. Este razonamiento lo apoya el Registrador de la Propiedad en el hecho de que del desglose de gravámenes de ambas fincas se desprende que hay terceros cuyos derechos deben protegerse.

Evidentemente, la premisa que inspira ese enfoque del Registrador de la Propiedad es concebir las acciones como mutuamente excluyentes. Es decir, que el acreedor debía inclinarse por una o por la otra, o ejercitar ambas en pleitos separados. Ya hemos explicado cómo ambas acciones son compatibles dentro del procedimiento ejecutivo *ordinario*. Aquí, en vez de recurrir a la ampliación de la hipoteca —derecho que le garantiza la ley— la acreedora P.R.P.C.A. decidió acumular la acción personal.

Notamos, además, que la anotación del embargo en nada afectará los derechos inscritos *anteriormente*, pues *no* tiene el mismo rango que el de la primera hipoteca. El embargo tendrá su propio rango sin duda inferior al de todos los demás derechos inscritos previamente, y con las consiguientes implicaciones, al hacer efectivo el cobro de la acreencia una vez vendidos los inmuebles en pública subasta. Obviamente, la inscripción del embargo en forma alguna significa que la P.R.P.C.A. cobrará el crédito correspondiente a los intereses —sin garantía hipotecaria ($90,000)— con la misma preferencia que el crédito garantizado. Repetimos, la hipoteca subsiste con su rango correspondiente.

Nuestra decisión de hoy evita que un acreedor hipotecario —mediante la vía ordinaria— se vea precisado a recurrir a un nuevo procedimiento para lograr el embargo de intereses. No hay razón para que, protegidos los derechos de ter-

ceros, en dicho procedimiento no pueda asegurarse la efectividad de parte de una sentencia correspondiente a un crédito sin garantía hipotecaria mediante el embargo de bienes que permanecen en el patrimonio del deudor. No menoscaba de manera alguna el principio de prioridad garantizado por el ordenamiento registral. Por el contrario, esta medida guarda afinidad con los principios de economía procesal encarnados en las Reglas de Procedimiento Civil y ratificados por este Tribunal en infinidad de ocasiones.

Por los fundamentos antes expuestos, *se revoca la nota denegatoria y se ordena la inscripción del embargo de conformidad con lo aquí resuelto. Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita. El Juez Asociado Señor Ortiz no intervino.