

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Popular Mortgate, Inc.<br><br>        Peticionario<br><br>              v.<br><br>Hon. Ariel Colón Clavell,<br>Registrador de la Propiedad<br>Sección Primera de Ponce<br><br><br>        Recurrido | 2011 TSPR 57<br><br><br>181 DPR \_\_\_\_ |

Número del Caso: RG        - 2009 - 4


Fecha: 8 de abril de 2011


Abogado de la Parte Peticionaria:

                Lcdo. Gilberto E. Padua Trabal


Abogado de la Parte Recurrida:

                Por derecho propio


Materia: Revisión Administrativa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial d              e las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Popular Mortgage, Inc.

    Peticionario

        v.

Hon. Ariel Colón Clavell,
Registrador de la Propiedad
Sección Primera de Ponce

    Recurrido

RG-2009-4      Recurso
Gubernativo

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 8 de abril de 2011.

El presente recurso gubernativo nos permite precisar cuál es el procedimiento para cancelar una hipoteca en garantía de un pagaré que se ha extraviado. Respecto a este procedimiento, nos toca resolver, específicamente, quién debe ser considerado como el **último poseedor conocido** del pagaré extraviado. No obstante, como cuestión de umbral, debemos determinar si el Registrador de la Propiedad, en el ejercicio de su facultad calificadora, podía negarse a inscribir un mandamiento judicial en el que se ordenaba la cancelación de un pagaré extraviado.

Por entender que la actuación del Registrador estuvo dentro de los límites que el Art. 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2451, establece para la calificación de documentos judiciales, estamos en posición de atender la controversia sobre la cancelación de la hipoteca. Sobre este particular, aclaramos que, para cancelar una hipoteca en garantía de un pagaré que se ha extraviado, procede instar una acción judicial contra el "último poseedor conocido" y "cualquier poseedor desconocidos" del pagaré. Dichas frases, resolvemos hoy, se refieren respectivamente al **último tenedor conocido** y **cualquier tenedor desconocido** del pagaré extraviado. Además, pautamos la norma de que, cuando quien inste la acción judicial es un tercero y se alegue que el último poseedor conocido del pagaré fue el deudor, deberá demandarse a ese último poseedor conocido, pero, además, deberá demandarse al último acreedor conocido de las obligaciones representadas por el pagaré, así como al acreedor que conste en el Registro, cuando este último sea una persona distinta al primero.

I.

En 1977, los esposos Francisco L. Torres y Carmen A. Figueras de Torres adquirieron una propiedad en el Municipio de Ponce. En 1992, constituyeron una hipoteca sobre este inmueble para garantizar un pagaré a favor de Doral Mortgage Corp. o a su orden, por la cantidad de $20,000, con una fecha de vencimiento de 1 de marzo de

2002.[1] Se alega que dicha deuda fue satisfecha en su totalidad, por lo que se le devolvió el pagaré a los esposos Torres Figueras, quienes, posteriormente y sin haberlo cancelado, lo extraviaron.

En febrero de 2006, los esposos Torres Figueras refinanciaron la referida propiedad con Popular Mortgage, Inc. Como parte de esta transacción, esa entidad financiera retuvo un dinero para la cancelación del pagaré extraviado por la vía judicial. Así las cosas, Popular Mortgage presentó una demanda de cancelación de pagaré extraviado ante el Tribunal de Primera Instancia, en la que incluyó como demandados a los esposos Torres Figueras y a otros demandados desconocidos. Allí, alegó que tenía una acreencia garantizada por la propiedad del matrimonio Torres Figueras y que, además, éstos le habían autorizado a llevar el proceso judicial para cancelar el pagaré extraviado. Asimismo, sostuvo que dicho pagaré había sido satisfecho en su totalidad y luego se había extraviado, por lo que solicitó al tribunal que ordenara su cancelación. Los esposos Torres Figueras fueron emplazados

---

[1]No existe controversia sobre el hecho de que el pagaré extraviado era pagadero a la orden. Ambas partes estipulan que el pagaré era "*a favor de Doral Mortgage Corp. o a su orden*". La Sec. 2-109(b) de la Ley de Instrumentos Negociables dispone que "una promesa u orden es pagadera a la orden si la misma es pagadera […] a una persona identificada o a su orden". Ley Núm. 208 de 17 de agosto de 1995, 19 L.P.R.A. sec. 509.

personalmente, pero nunca comparecieron ante el foro primario, razón por la cual se les anotó la rebeldía.[2]

Luego del trámite correspondiente, el foro primario emitió una sentencia en la que declaró extraviado el pagaré y extinguida la referida deuda, por lo que ordenó la cancelación de la hipoteca en el Registro de la Propiedad. Posteriormente, el Tribunal de Primera Instancia expidió un mandamiento dirigido al Registrador de la Propiedad de Ponce, mediante el cual le ordenó a éste cancelar el referido gravamen sobre el inmueble del matrimonio Torres Figueras.

En mayo de 2009, Popular Mortgage presentó el mandamiento ante el Registro de la Propiedad y solicitó la cancelación del gravamen. El Registrador de la Propiedad, Hon. Ariel Colón Clavell, le solicitó que acreditara que se había emplazado a los esposos Torres Figueras, y así lo hizo Popular Mortgage. Posteriormente, el Registrador emitió una notificación de faltas en cuanto al mandamiento presentado, en la cual sostuvo que no se había notificado a Doral Mortgage, a quien consideró como el último poseedor del pagaré extraviado.

Ante esta notificación, Popular Mortgage presentó un escrito de recalificación en el que alegó que la facultad calificadora del Registrador en cuanto a los documentos judiciales es limitada, por lo que debía inscribir el

---

[2] En cuanto a los demandados desconocidos, el tribunal autorizó que se emplazaran por edicto, y eximió a Popular Mortgage de notificarles la demanda por ser demandados desconocidos de los cuales no se tenía nombre o dirección.

mandamiento presentado sin considerar asuntos sustantivos del proceso. Sin haber resuelto la solicitud de recalificación de Popular Mortgage, el Registrador emitió una segunda notificación de faltas y señaló que la sentencia no cumplía con los requisitos impuestos en el Art. 64(1) de la Ley Hipotecaria, *supra*, y el Art. 131.1 del Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (Reglamento Hipotecario), Reglamento Núm. 2674, Departamento de Justicia, 9 de julio de 1980, según enmendado.

Popular Mortgage retiró entonces el mandamiento y lo presentó nuevamente en agosto de 2009. A los pocos días de la presentación del documento, el Registrador le envió una notificación de faltas en la que le indicó que el mandamiento presentado adolecía de los mismos dos defectos que le había señalado previamente. Por ello, Popular Mortgage solicitó la recalificación del documento, basándose esencialmente en los mismos fundamentos de su escrito anterior. En octubre de 2009, el Registrador le notificó que rechazaba su solicitud de recalificación y que realizaría una anotación preventiva de denegatoria de inscripción. Se reiteró en que el tribunal no tenía jurisdicción para emitir su sentencia, pues el último poseedor conocido del pagaré extraviado, Doral Mortgage, no fue parte de la demanda de cancelación de ese pagaré.

Inconforme con esta determinación, Popular Mortgage acudió ante nos mediante un oportuno recurso gubernativo.

En esencia, alega que el Registrador erró al denegar la inscripción del mandamiento de cancelación del pagaré extraviado pues se trata de un documento judicial, por lo que su facultad calificadora es limitada. En la alternativa, planteó que, habiéndose extraviado el pagaré en manos de los esposos Torres Figueras, procedía instar la acción judicial contra ellos y no contra Doral Mortgage. Por su parte, el Registrador de la Propiedad compareció y reiteró la calificación realizada. Por un lado, señala que, a tenor con el Art. 64 de la Ley Hipotecaria, *supra*, el Registrador tiene facultad para verificar si un documento judicial cumple con el requisito de jurisdicción sobre la persona; por el otro, aduce que la frase "se instará acción judicial contra el último poseedor conocido de los títulos extraviados" se debe interpretar como que hay que demandar al acreedor que consta en el Registro, razón por la cual debió haberse demandado a Doral Mortgage.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la presente controversia.

## II.

Previo a discutir las reglas que gobiernan el proceso de cancelación de hipoteca en garantía de un pagaré extraviado, debemos analizar cuál es la facultad del Registrador para calificar documentos expedidos por una autoridad judicial.

A.

Una vez más, debemos reiterar que "la función calificadora del Registrador es función trascendente sin la cual no podría cumplirse el principio de legalidad que gobierna el sistema inmobiliario registral. La calificación es la facultad por excelencia del Registrador que al ejercitarla realiza el propósito de que el Registro encierre sólo actos válidos y derechos perfectos". P.R. Prod. Credit Assoc. v. Registrador, 123 D.P.R. 231, 236 (1989), citando L. Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267, 273 (1976). En igual sentido, más recientemente, expresamos que:

> [l]a calificación registral constituye la piedra angular del principio de legalidad. Esta calificación exige del Registrador de la Propiedad un juicio de crítica jurídica sobre la validez y eficacia de los negocios jurídicos contenidos en los documentos presentados, a través de la cual se logra que sólo tengan acceso al Registro los títulos que cumplan con las exigencias legales. Rigores v. Registrador, 165 D.P.R. 710, 719-720 (2005) (Énfasis en el original suprimido.)

Ahora bien, la facultad calificadora del Registrador depende del tipo de documento que éste tenga ante así. Íd., pág. 721. Así, cuando se trata de documentos judiciales, la facultad calificadora del Registrador es más limitada. P.R. Prod. Credit Assoc. v. Registrador, supra; U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448, 469 (1989). En estos casos, "la calificación registral se circunscribe, únicamente, a lo dispuesto en el Art. 64 de

la Ley Hipotecaria". <u>Rigores v. Registrador</u>, *supra*, pág. 721. Dicho artículo, en lo pertinente, establece:

> En cuanto a los documentos expedidos por la autoridad judicial, la calificación expresada se limitará:
> (1) **A la jurisdicción y competencia del tribunal;** a la naturaleza y efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; **y si se observaron en él los tramites y preceptos esenciales para su validez;**
> (2) a las formalidades extrínsecas de los documentos presentados, y
> (3) a los antecedentes del Registro. (Énfasis suplido)[3]

En <u>P.R. Prod. Credit Assoc. v. Registrador</u>, *supra*, explicamos que, al instituir el Art. 64, el legislador puertorriqueño no siguió "las corrientes modernas que confieren al Registrador amplísimos poderes en su función calificadora". Sobre la calificación de documentos judiciales, dicho artículo incorporó el enfoque restrictivo adoptado hasta entonces por nuestra jurisprudencia. *Íd.* Según esta visión legislativa, el Registrador no puede ser juez de jueces. <u>U.S.I. Properties, Inc. v. Registrador</u>, *supra*, pág. 470. De ahí que su facultad calificadora se limite a la jurisdicción y competencia del tribunal que expidió el documento.

---

[3] Por su parte y en igual sentido, el Art. 79.1 del Reglamento Hipotecario, *supra*, dispone:

Las determinaciones judiciales respecto a los hechos y derechos que corresponden a las partes envueltas en un litigio a tenor con el artículo 67 de la Ley [30 L.P.R.A. sec. 2270] no podrán ser objeto de calificación por el Registrador sin perjuicio a lo dispuesto en el artículo 64 de la Ley [30 L.P.R.A. sec. 2267] tocante a los documentos expedidos por la autoridad judicial.

El profesor Rivera Rivera opina que "el verdadero alcance de la norma en lo relativo a la jurisprudencia y competencia del tribunal es oscuro, no tanto porque su letra lo sea, sino porque remite a institutos del Derecho procesal que todavía no han sido debidamente aclarados". L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Jurídica Eds., 2002, pág. 297. Como nos recuerda ese mismo autor, aunque la anterior Ley Hipotecaria no hablaba de *jurisdicción*, nuestra jurisprudencia se encargó de incorporar ese concepto a nuestro ordenamiento registral. *Íd.*, pág. 298. Así, por ejemplo, en Santos v. Registrador, 60 D.P.R. 135 (1942), resolvimos que un Registrador estaba facultado "para inquirir en cuanto a la jurisdicción con que fue dictada [una] resolución judicial ordenando la venta de una finca hipotecada en pública subasta sin haberse cumplido con [el] requisito [de notificar el requerimiento de pago de forma legal]. *Íd.*, pág. 143. A similar conclusión llegamos posteriormente en L. Dershowitz & Co., Inc. v. Registrador, *supra*. Allí, resolvimos que:

> El Registrador […], en ejercicio de su facultad calificadora, puede cuestionar la jurisdicción del tribunal para adjudicar derechos de la titular [de una propiedad], si el mandamiento [de ejecución de sentencia] presentado proveniente de pleito en el cual no es parte, ninguna luz hace respecto a haber sido ella, o aun su marido […], citados o emplazados de una moción sobre nulidad de escritura, especialmente cuando pronunciamiento de tal trascendencia aparece relatado como efímero incidente procesal". *Íd*, pág. 271.

Establecida la normativa sobre la facultad del Registrador para calificar documentos expedidos por una autoridad judicial, repasemos ahora las normas y principios que rigen la cancelación de una hipoteca en garantía de un pagaré extraviado.

B.

La cancelación se define como "la operación registral que tiene por objeto dejar sin efecto y publicar la pérdida de vigencia de un asiento anterior". Rivera Rivera, op. cit., pág. 473. Véase, además, J.M. Chico y Ortiz, Estudios sobre derecho hipotecario, 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. II, pág. 1215. Conforme a esta definición, hemos dicho que la finalidad de las cancelaciones es adaptar el contenido del Registro a la realidad extrarregistral, evitando así que se pregone la subsistencia de situaciones jurídicas extinguidas. S.B. Pharmco P.R. Inc. v. Registrador, 148 D.P.R. 336, 346 (1999); Baldrich Colón v. Registrador, 86 D.P.R. 42, 51 (1962); Rivera Rivera, op. cit., pág. 473.

La regla general es que para cancelar un asiento hace falta el consentimiento de los **titulares afectados**, de manera que si los titulares no prestan su consentimiento, podrá acudirse a los tribunales para que éstos ordenen la cancelación correspondiente. R.M. Roca Sastre y L. Roca-Sastre Muncunill, Derecho Hipotecario: Fundamentos de la publicidad registral, 8va ed. rev., Barcelona, Ed. Bosch, 1995, T. III., pág. 147.; Rivera Rivera, op. cit., pág.

474. Así lo reconoce la Ley Hipotecaria en su Art. 132, 30

L.P.R.A. sec. 2456, el cual dispone:

> Las inscripciones, anotaciones preventivas y notas hechas en virtud de escritura o documento auténtico, se cancelarán mediante otra escritura o documento de la misma naturaleza, en que exprese su consentimiento **el titular a cuyo favor se hubiere hecho el asiento, o su causahabiente, o legítimo representante.** También se cancelarán en virtud de resolución judicial firme, debidamente testimoniada o inserta en un mandamiento judicial, según los casos. Lo establecido en esta sección es sin perjuicio de las disposiciones especiales que sobre determinadas cancelaciones ordena este subtítulo. (Énfasis suplido)

Por su parte, el Art. 138 de la Ley Hipotecaria, 30

L.P.R.A. sec. 2462, establece unas reglas especiales para

las cancelaciones de hipotecas en garantía de un pagaré.

Dicho artículo dispone que:

> [L]as inscripciones de hipoteca constituidas para garantizar obligaciones representadas por títulos transferibles por endoso o pagaderos al portador, cualquiera que sea la denominación que se les asigne, se cancelarán total o parcialmente mediante escritura otorgada por los tenedores legítimos de los títulos expresados. En todo caso deberá hacerse constar en la escritura la identificación de los títulos y su inutilización o reducción parcial en el acto del otorgamiento. **Si todos o algunos de dichos títulos se hubiesen extraviado o hubieren sido destruidos sin los requisitos anteriores, únicamente podrán cancelarse dichas inscripciones mediante la presentación de la sentencia firme en que se declare haber quedado extinguidas las obligaciones representadas por los referidos títulos.**
>
> En las escrituras de cancelación de títulos transferibles por endoso será obligación del notario hacer constar que el compareciente es tenedor por endoso o que el

último endoso se hizo en blanco. (Énfasis suplido)

Esta norma halla su complemento en el Art. 131.1 del Reglamento Hipotecario, *supra*, el cual establece que:

> Las inscripciones de hipoteca constituidas en garantía de títulos transmisibles por endoso o al portador podrán cancelarse total o parcialmente conforme a lo dispuesto en el artículo 138 de la Ley.
>
> En caso de haberse perdido el título garantizado o alguno de ellos, de ser varios, se instará acción judicial contra el **último poseedor conocido de los títulos extraviados, y a cualquier poseedor desconocido**. El tribunal ordenará la publicación de edictos con arreglo a las normas de procedimiento civil vigentes relativas a las acciones contra personas desconocidas.
>
> **Deberá alegarse y probarse que el crédito fue satisfecho y el extravío de los títulos.**
>
> Si los títulos nunca salieron de manos del deudor, se probará este hecho a satisfacción del tribunal, iniciándose en este caso la acción sólo contra personas desconocidas posibles poseedoras de los títulos extraviados. (Énfasis suplido)

Como puede inferirse, el procedimiento para cancelar una hipoteca en garantía de un pagaré requiere que el tenedor legal del pagaré acuda a un notario para que este último autorice la correspondiente escritura de cancelación. Nótese que quien viene llamado a otorgar dicha escritura es el **tenedor legal** del pagaré. Esta es una novedad de la Reforma Hipotecaria de 1979. Bajo la antigua Ley Hipotecaria, la norma era que las inscripciones de hipoteca en garantía de un pagaré se cancelaban mediante

escritura otorgada por **quienes hubieran cobrado los créditos**. Art. 82 de la Ley Hipotecaria para las Provincias de Ultramar de 1893. [4] Con esa norma, el legislador decimonónico quiso proteger a los acreedores. A tales efectos, en Lozada Merced v. Registrador, 100 D.P.R. 99 (1971), expresamos:

> ¿Qué garantía ofreció el legislador al tenedor legal de un instrumento garantizado con hipoteca de que la hipoteca no se cancelaría sin su autorización? A tales fines dispuso el legislador […] que la cancelación se haría a instancia de la persona que haya *cobrado* el crédito. Esto implica que el legislador tuvo en mente que sería el *acreedor* y no el deudor quien acudiría al notario para otorgar la escritura de cancelación y que el notario daría fe de que conoce a la persona del acreedor y de que ésta fue la persona que cobró el crédito hipotecario. *Íd.*, pág. 105. (Énfasis en el original)

No obstante, la práctica notarial en Puerto Rico, comúnmente, era que quien otorgaba la escritura de cancelación de la hipoteca no era el acreedor que cobró los créditos, sino el deudor que los pagó, a quien para tales fines el acreedor devolvía el pagaré. *Íd.*, págs. 105-106.

---

[4]El Art. 82 de la antigua Ley Hipotecaria, equivalente al Art. 138 de la Ley Hipotecaria actual, disponía:

Las inscripciones hechas para responder de cantidades representadas por títulos al portador o trasmisibles por endoso, se cancelarán presentándose la escritura otorgada por **los que hayan cobrado los créditos**, en la cual debe constar haberse inutilizado en el acto de su otorgamiento, los títulos endosables o al portador. Si todos o algunos de dichos títulos se hubiesen extraviado, sólo podrán cancelarse dichas inscripciones por medio de mandamiento judicial creditivo de haber recaído sentencia firme, obtenida por el procedimiento ordinario del Código de Enjuiciamiento Civil, en que se declare haber quedado extinguidas dichas obligaciones. (Énfasis suplido)

Por esa razón, se permitía que quien otorgara la escritura de cancelación de hipoteca fuera el deudor como tenedor legítimo del pagaré. *Íd.* En esos casos, el procedimiento variaba según la naturaleza del pagaré. Si el instrumento era pagadero al portador, bastaba con que, en la escritura, se hiciera constar que el deudor había presentado el documento al notario y que este último lo había inutilizado en el acto de otorgamiento. En cambio, si el instrumento era pagadero a la orden, transferible por endoso, era necesario que el tenedor legal del pagaré lo endosara y lo entregara al deudor, quien podría entonces presentarlo al notario para ser inutilizado. Habiéndose convertido el deudor, en virtud de tal endoso, en dueño de su propia obligación, podía válidamente consentir en solicitar la cancelación de la inscripción hipotecaria, por confusión de derechos. *Íd.,* pág. 104. El notario tenía, pues, la obligación de hacer constar que el deudor era el tenedor del pagaré por endoso y entrega.

La Ley Hipotecaria de 1979 incorporó esta doctrina jurisprudencial a nuestro ordenamiento registral mediante el último párrafo del Art. 138, *supra.* [5] Dicho párrafo establece que "[e]n las escrituras de cancelación de títulos transferibles por endoso será obligación del

---

[5] Véase *Informe de la Cámara de Representantes sobre el Proyecto del Senado 792*, XIV Rev. Jur. U.I.A. 391, 410 (1980); *Ponencia del Departamento de Justicia en torno al Proyecto del Senado 792 y al Proyecto de la Cámara 915*, XIV Rev. Jur. U.I.A. 419, 449. Véase, además, D. Martínez Irizarry y H.M. Brau del Toro, *Ponencia parcial sobre el Proyecto del Senado 792, Ley Hipotecaria y del Registro de la Propiedad*, XIV Rev. Jur. U.I.A. 467, 511 (1980).

notario hacer constar que el deudor es tenedor por endoso o que el último endoso se hizo en blanco". *Íd.*

Queda claro, pues, que la escritura de cancelación de una hipoteca en garantía de un pagaré puede ser otorgada por el **deudor** del crédito hipotecario, siempre que éste sea el tenedor legal del pagaré por endoso y entrega, hecho que el notario tiene que hacer constar en la escritura.

Ahora bien, cuando el pagaré se extravía o es destruido, la Ley Hipotecaria ordena un procedimiento diferente. Rivera Rivera, op. cit., págs. 477-478. En esos casos, las inscripciones de hipoteca en garantía de un pagaré se cancelan mediante la presentación de una sentencia judicial en la que se declaren extinguidas las obligaciones representadas por el instrumento negociable. Art. 138 de la Ley Hipotecaria, *supra*.[6]

De ordinario, recae sobre un notario la tarea de verificar que el tenedor del pagaré ha consentido a la cancelación de la hipoteca. Sin embargo, cuando el pagaré se extravía es imposible que un notario lleve a cabo tal verificación. En esos casos, la ley exige instar una acción judicial contra el **último poseedor conocido** y **cualquier poseedor desconocido** del pagaré para que un tribunal compruebe que la deuda fue satisfecha y que el pagaré se extravió. Art. 131.1 del Reglamento Hipotecario, *supra*.

---

[6] Esta regla es idéntica a la que existía bajo la antigua Ley Hipotecaria. Véase el Art. 82 de la Ley Hipotecaria para las Provincias de Ultramar de 1893, *infra*, n. 4.

Surge entonces la interrogante de quién debe ser considerado como el último **poseedor** del pagaré extraviado.

En Torres v. Registrador, 65 D.P.R. 404 (1945), este Tribunal atendió una controversia sobre la cancelación de una hipoteca en garantía de un pagaré que fue destruido. En aquel caso, el señor Torres suscribió un pagaré al portador y, para garantizarlo, constituyó una hipoteca sobre una finca de su propiedad. Cinco años después, compareció ante notario y mediante escritura expuso que hallándose en su poder el referido pagaré lo había destruido totalmente, por lo cual quería y consentía a que en el Registro de la Propiedad se cancelase la hipoteca. Posteriormente, el señor Torres presentó la referida escritura de cancelación en el Registro de la Propiedad, acompañada de una declaración jurada en la que, una vez más, se hacía constar que hallándose el pagaré en su poder, lo había destruido. El Registrador denegó la cancelación por no haberse seguido el procedimiento prescrito en ley para aquellos casos en los que el pagaré se extravía o es destruido. Al confirmar la actuación del Registrador, expresamos lo siguiente:

> […] Para la cancelación de la hipoteca en tales casos [en los que el pagaré se extravía o es destruido] requiere el art. 82 la garantía de una sentencia firme que acredite la destrucción o extravío del pagaré. Ninguna seguridad ofrecería a los que pudieran ser tenedores del pagaré hipotecario si la mera declaración jurada del dueño de la finca gravada, al efecto de que el pagaré estuvo en su poder y él lo había destruido, acompañando esta declaración de una escritura de cancelación

otorgada por él mismo, bastase para cancelar la hipoteca en el Registro. Podría ser falsa esa declaración y mediante ella perjudicar los derechos de un tercero que fuese tenedor del pagaré. *Íd.*, págs. 406-407.

Si bien <u>Torres v. Registrador</u>, *Íd.*, no dispone de la presente controversia, nuestra Opinión en aquel caso arroja luz sobre la intención del legislador decimonónico al establecer un procedimiento alterno para la cancelación de hipotecas en garantía de un pagaré extraviado o destruido. Vemos, pues, que la intención legislativa fue asegurarles a quienes pudieran ser **tenedores** del pagaré extraviado o destruido que sus derechos garantizados por el Registro no serían cancelados sin su consentimiento. Puesto que la Ley Hipotecaria de 1979 no modificó la regla sobre este asunto, nuestra interpretación se mantiene vigente.

Conforme a lo anterior, aclaramos que allí donde el Art. 131.1 del Reglamento Hipotecario, *supra*, alude al último **poseedor** conocido y cualquier **poseedor** desconocido del pagaré extraviado, debe entenderse que ese artículo se refiere al último **tenedor** conocido y cualquier **tenedor** desconocido del instrumento extraviado.[7]

Procede, entonces, precisar el significado del término **tenedor**. Para ello, debemos acudir a la Ley de

---

[7]Esta determinación encuentra apoyo en nuestra decisión en <u>Hau v. Registrador</u>, 58 D.P.R. 802 (1941). Allí señalamos que, para solicitar la cancelación de una hipoteca en garantía de un pagaré transmisible por endoso, no basta con que el interesado meramente sea el "último poseedor" del pagaré. Es necesario, además, que "se [demuestre] al registrador el perfecto derecho de dominio que tenía dicho último poseedor y, por tanto, su plena capacidad para consentir en la cancelación de la hipoteca en que era 'único interesado'". *Íd.*, págs. 809-810.

Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, 19 L.P.R.A. secs. 401 *et seq.* La Sec. 1-201 de dicho estatuto define **tenedor** de la siguiente manera: "Respecto a un instrumento negociable, significa la persona en posesión del mismo si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo". *Íd.*, 19 L.P.R.A. sec. 408.

Ahora bien, ¿qué ocurre cuando, como sucede en este caso, la acción judicial que ordena el Art. 131.1 del Reglamento Hipotecario, *supra*, es instada por un tercero y de las alegaciones se infiere que el último poseedor del pagaré extraviado fue el deudor y no un acreedor? A la luz del Art. 131.1, lo correcto sería instar la acción judicial contra el deudor por éste ser el último poseedor del pagaré. Sin embargo, esta solución no es del todo satisfactoria, pues desprotege a los posibles acreedores de las obligaciones representadas por el pagaré extraviado, precisamente a quienes la ley busca proteger. Adviértase que un deudor podría, por ejemplo, confabularse con un tercero para cancelar una hipoteca en garantía de un pagaré con cuyas obligaciones el deudor aún no ha cumplido.

Para evitar que, en circunstancias como las del presente caso, una hipoteca en garantía de un pagaré extraviado sea cancelada sin el consentimiento de los posibles acreedores, es fundamental que el tribunal de instancia compruebe que el pagaré se extravió en manos del

alegado último poseedor conocido (en este caso, el deudor).

Es necesario, pues, que se traigan al pleito, como partes

indispensables, al último acreedor conocido y al acreedor

que conste en el Registro, si este último fuera una persona

distinta al primero. A tales efectos, adoptamos la

siguiente norma. **Cuando un tercero pretenda cancelar una**

**hipoteca en garantía de un pagaré extraviado y se alegue**

**que el último poseedor conocido fue el deudor, se deberá**

**instar una acción judicial contra ese último poseedor**

**conocido y cualquier poseedor desconocido del pagaré**

**extraviado. Además, se deberá demandar y emplazar al último**

**acreedor conocido de las obligaciones representadas por el**

**pagaré. Ahora bien, si el último acreedor conocido es una**

**persona distinta al acreedor que consta en el Registro, se**

**deberá notificar también a este último. El tribunal de**

**instancia deberá comprobar que el pagaré se extravió en**

**manos del alegado último poseedor conocido.** Con esta

solución, le ofrecemos al posible titular de la hipoteca

una garantía de que ésta no será cancelada sin su

consentimiento. [8] **Por tratarse de un asunto de primera**

**impresión, la norma pautada se aplicará prospectivamente.**

---

[8]La norma pautada hoy es consistente con lo dispuesto el Art. 147, inciso 3, de la Ley Hipotecaria, 30 L.P.R.A. sec. 2471(3). En lo pertinente, dicho artículo dispone que:

> La cancelación de cualquier asiento deberá contener **necesariamente** […] [los] nombres y circunstancias personales de los otorgantes o de las persona o personas a cuya instancia o con cuyo consentimiento se verifique la cancelación y, cuando se hiciere a nombre de persona distinta de aquélla a cuyo favor aparece el asiento que se

Establecido lo anterior, procedemos a disponer de la controversia ante nuestra consideración.

## III.

En este caso, el Registrador de la Propiedad denegó la inscripción de un mandamiento judicial en el que se ordenaba la cancelación de una hipoteca en garantía de un pagaré extraviado. En su notificación de faltas, señaló que la sentencia en que se declaró extraviado el pagaré y extinguida la deuda no cumplió con los requisitos dispuestos por la Ley y el Reglamento Hipotecarios, *supra*. Ante nos, Popular Mortgage argumenta que el Registrador no estaba facultado para denegar la inscripción del referido mandamiento. Basa su argumento en la facultad limitada que tiene el Registrador a la hora de calificar documentos expedidos por autoridad judicial. En apoyo de su posición, plantea que el referido mandamiento judicial fue producto de un juicio en el que se observaron los procedimientos dispuestos por ley. Sobre este punto, no le asiste la razón a Popular Mortgage. Veamos.

El Art. 64 de la Ley Hipotecaria, *supra*, establece los límites de la facultad calificadora del Registrador respecto a los documentos expedidos por una autoridad judicial. El inciso 1 de dicho artículo permite la calificación registral cuando ésta se circunscribe "a la jurisdicción y competencia del tribunal; a la naturaleza y

---

cancela, las constancias que acrediten la representación de la persona que insta o presta el consentimiento. (Énfasis suplido)

efectos de la resolución dictada si ésta se produjo en el juicio correspondiente; **y si se observaron en él los trámites y preceptos esenciales para su validez**". *Íd.*

Conforme a lo anterior, forzoso es concluir que, en este caso, el Registrador tenía facultad para pasar juicio sobre si se cumplió cabalmente con el procedimiento dispuesto en el Art. 138 de la Ley Hipotecaria, *supra*, y el Art. 131.1 de Reglamento Hipotecario, *supra*, para la cancelación de una hipoteca en garantía de un pagaré extraviado.

Para tales casos especiales, el Art. 131.1 del Reglamento Hipotecario, *supra*, dispone que "se instará acción judicial contra el último poseedor conocido de los títulos extraviados, y a cualquier poseedor desconocido". *Íd.* Dicha referencia al último poseedor conocido del pagaré extraviado o destruido, hemos aclarado hoy, se refiere al último tenedor conocido del pagaré. A la luz de esta interpretación, concluimos que Popular Mortgage actuó conforme a la ley al instar la acción judicial contra los esposos Torres Figueras, quienes, según se infiere de la demanda, fueron los últimos poseedores del pagaré.

## IV.

Por los fundamentos expuestos, se revoca el dictamen del Registrador de la Propiedad y se ordena que se cancele el asiento que anuncia el gravamen hipotecario.

Se dictará sentencia de conformidad.


                                        Federico Hernández Denton
                                             Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Popular Mortgage, Inc.

    Peticionario

        v.                    RG-2009-4          Recurso
                                                        Gubernativo
Hon. Ariel Colón Clavell,
Registrador de la Propiedad
Sección Primera de Ponce

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 8 de abril de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Registrador de la Propiedad y se ordena que se cancele el asiento que anuncia el gravamen hipotecario.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo